PIOCHE MINES CONSOL., Inc. et al. v. FI-
DELITY-PHILADELPHIA TRUST
CO. et al.

No. 12865.

United States Court of Appeals
Ninth Circuit.

March 23, 1953.

H. R. Cooke and Thomas A. Cooke, Reno, Nev., Francis T. Cornish, Berkeley, Cal., for appellant, Pioche Mines Consol., Inc.

Douglas A. Busey, Reno, Nev., for appellant, Pioche Mines Co.

Francis T. Cornish, Berkeley, Cal., for appellant, John Janney.

Bruce R. Thompson, Reno, Nev., for appellant, Richard K. Baker.

William J. Forman, Reno, Nev., J. Tyson Stokes and Thomas B. K. Ringe, Philadelphia, Pa., for appellee.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a summary judgment granted on motion of Fidelity-Phila-

delphia Trust Company, plaintiff below, and from the dismissal of a complaint in intervention of Baker and a counterclaim of Pioche Mines Consolidated and its president, Janney, who were defendants.

Pioche Mines Consolidated, a Nevada corporation, hereafter referred to as Consolidated, was formed in 1928 to hold the controlling interest in two other Nevada companies, Pioche Mines Company and Nevada Volcano Mines Company. Consolidated issued debenture bonds in the amount of several hundred thousand dollars in 1929 and 1930, mostly acquired by persons in the east. It was agreed that Fidelity-Philadelphia Trust Company, a Pennsylvania corporation, should act as trustee in these bond issues.

Thereafter Consolidated defaulted in payment of the obligations. In 1939 a group of the eastern debenture holders representing a majority of the outstanding debentures met and executed a Debenture Holders' Agreement. In this document these holders agreed, inter alia, to deposit their debentures with Fidelity as trustee to take such action relating thereto as the holders should direct, reserving to the holders the right to make a settlement agreement with Consolidated. In addition, the agreement set up a Debenture Holders' Committee of four men (two of whom survive), which was given broad powers generally to execute the agreement and to represent the debenture holders in all dealings with Fidelity and Consolidated. In 1940, on order of the Committee, Fidelity as trustee filed a diversity suit in the District Court for Nevada against Consolidated, Pioche Mines Company, and John Janney, president of Consolidated, to recover the principal and interest of the bonds. While depositions were being taken in that action, it was agreed that the suit should be settled. The result was a "Settlement Agreement," drawn up in 1942, and to which the parties were Consolidated, Debenture Holders' Committee, and a creditors' committee representing various creditors of the three companies. Fidelity was not a party to it.

The Settlement Agreement provided that the three Nevada companies were to be consolidated into a new company which would take title to all properties owned by the three. It further provided: (1) That Consolidated should issue 30-year income bonds to the debenture holders in exchange for the old debentures; (2) that Consolidated should issue 5-year preference notes to secure cash to finance the reorganization; and (3) that a certain amount of 30-year income notes should be issued to cover certain debts and reorganization expenses. Under the terms of this contract all parties to it agreed to use their best efforts to obtain cash in exchange for the preference notes, and also agreed to use their best efforts to obtain a long-term lease of the properties, under which the new company to be formed would have an assured income. Finally, the agreement provided for the eventual discontinuance of all legal proceedings then pending.

Difficulties arose in carrying out the Settlement Agreement. A statutory merger of the three companies under Nevada law was effected in late 1943. A dispute then arose between the parties as to whether the income bonds to be transmitted to the debenture holders complied with the Trust Indenture Act of 1933. After resolution of that issue, the impasse which resulted in the present proceedings arose. Pursuant to previous correspondence, Consolidated had sent to Fidelity, at the latter's request, most of the income bonds for transmittal to the debenture holders. The Debenture Holders' Committee thereupon instructed Fidelity to hold both the old debentures and the new income bonds, taking the position that Consolidated should complete its duties under the agreement, including the sale of the preference notes, after which a closing settlement would be held at which time all matters remaining would be settled and the old debentures delivered for cancellation. Consolidated, on the other hand, insisted that the old debentures must first be exchanged for the new income bonds. Until that was done, Consolidated contended, the preference notes would not be marketable. The result was a complete deadlock, with Fidelity holding both sets of securities, and neither party to the Settlement Agreement willing to budge.

Thereafter, in May of 1946 (the dismissal of the original suit as contemplated by the Settlement Agreement not having been effected), Fidelity filed in the District Court a pleading entitled "Supplemental Complaint." This pleading had the effect of completely changing the character of the action then pending. It alleged the execution of the Settlement Agreement by the Debenture Holders' Committee and Consolidated; set forth the terms of that agreement; and alleged that it had been performed in certain particulars, and had not been performed in others. The basic prayer of the complaint was that the court enter its order directing the parties to the action to perform the remaining unperformed obligations imposed upon them respectively by the agreement at such time and in such manner as the court might direct. Consolidated answered this complaint, and at the same time moved the court to order the joinder of the Debenture Holders' Committee as party plaintiff. Also proffered at that time was a counterclaim, with a motion for leave to file. The counterclaim alleged the existence of a conspiracy between Fidelity and the Debenture Holders' Committee and the carrying out by them of certain acts for the purpose of preventing the consummation of the Settlement Agreement and for the purpose of financially crippling Consolidated so that it could be taken over cheaply by the debenture holders. The counterclaim asked for damages of $3,000,000.

While these motions were pending, Fidelity moved for summary judgment on its supplemental complaint, supported by affidavits. Before this latter motion was decided, the court denied Consolidated's motion to join Debenture Holders' Committee as a party, but granted permission to file the counterclaim. Fidelity answered the counterclaim. Meanwhile Baker, one of the parties to the contract who had not been a party to the action previously was permitted to intervene, and joined in seeking the relief prayed for in the counterclaim. Fidelity answered his complaint on the merits. Prior to the hearing on the motion for summary judgment, Consolidated filed counter-affidavits, and made numerous motions relating to the sufficiency of Fidelity's showing on its motion. After hearing, the court decided there was no genuine issue of fact raised on the supplemental complaint and the answer to it; dismissed the counterclaim and the complaint in intervention; and rendered summary judgment for Fidelity ordering, among other things, the following: (1) That plaintiffs and defendants perform the remaining unperformed obligations of the Settlement Agreement; (2) that the securities transmitted by Consolidated to Fidelity be exchanged for the old debentures, and that the latter be deposited in court; and (3) that the plaintiffs and defendants together take the necessary steps to obtain cash for the preference notes described in the Settlement Agreement. This appeal followed.

Consolidated advances several contentions, one of which—and the only one we will notice—is that Fidelity's action should have been dismissed because of the failure of the court on Consolidated's motion to join indispensable parties, namely, the members of the Debenture Holders' Committee. See Rule 19, F.R.C.P., 28 U.S.C.A. These parties, not being amenable to service in the district of Nevada, could not of course be brought in by process.

Responding to the claim that a dismissal was imperative because of the absence of indispensable parties, Fidelity argues that since indispensability is not jurisdictional, but is based on equity, the Debenture Holders' Committee should not be held indispensable in the circumstances of this case. We are not able to agree. As observed in 3 Moore's Federal Practice § 19.05, "the concept of indispensability goes beyond federal jurisdiction and touches the very power or the right of the court to make an equitable adjudication, where an indispensable party is not before it. In this situation, barring exceptional equities, it should not proceed without his joinder, even though his citizenship would not destroy jurisdiction in the cases of diversity and alienage, or although it is immaterial, as when jurisdiction is based on the character

of the subject matter—a federal question." No exceptional equities are discernible here.

We proceed to consider the nature of the action and the effect of the relief granted. The position taken by Fidelity in bringing its supplemental complaint appears from the statement of its counsel, which the trial judge quoted in his opinion, to the following effect: "[The Settlement Agreement is a contract which provides that] one side shall do certain things and the other side shall do certain things. There has been dispute between the two parties as to how they shall do it and who shall do it first. It has got to a point where nothing can be done, hence the supplemental complaint and presentation of the matter by Fidelity here to see what shall we do, tell us what we shall do, here is the record, give us judgment which says do this and that and we will go ahead and dispose of the matter."

As already said, the contract is between the Debenture Holders' Committee and Consolidated. Necessarily these must be the "two parties" to whom counsel refers in his statement. We gather that Fidelity and the trial judge regarded Fidelity as a sort of intermediary or stakeholder, waging the suit for the purpose of settling what the parties to the contract should do to carry out their respective engagements. Yet one of those parties was not before the court. The judgment entered runs only against the party who was, namely Consolidated. The judgment directs that "plaintiffs and defendants" take the necessary steps to sell the preference notes; and that "plaintiffs and defendants" perform the remaining unperformed obligations under the Settlement Agreement, which obligations, by the terms of the agreement, would include also using their best efforts to secure a long-term lease of the properties. The "plaintiffs and defendants" in the lower court were Fidelity on the one hand and Consolidated on the other.

Now the Settlement Agreement plainly provided that Consolidated and Debenture Holders' Committee shall use their best efforts to sell the preference notes and to obtain the lease—not that Consolidated and Fidelity shall do so. Clearly the Committee is not bound by the order to carry out *its* contractual obligations; and equally clear is it that the Committee and not a trust company was expected to perform in these respects.

A leading case indicating the criteria by which to determine whether or not a party is indispensable is State of Washington v. United States, 9 Cir., 87 F.2d 421, 427–428. The court said:

"From these authorities it appears that the absent party must be interested in the controversy. After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

"If, after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable."

Asking ourselves these questions as related to the situation in the instant case, we get certain answers:

(1) Not only is the interest of the Debenture Holders' Committee not distinct and severable, but it has the only real interest in the Settlement Agreement. Fidelity, not a party to that agreement, could have no valid interest in the manner or method of carrying it out, even though it

might be interested in having it performed promptly.

(2) We are unable to see how the court could render justice between the parties before it, since the complaint was based on an allegation that the two parties to the contract had not fulfilled their obligations under it. Debenture Holders' Committee had obligations under that agreement; Fidelity had none. As to the matter of rendering justice, it is notable that the court proceeded to order Consolidated to do a number of things notwithstanding it stated in its opinion that "[t]he impasse spoken of by Fidelity in its brief was created by Fidelity's action in following the instructions of the Debenture Holders' Committee. The instructions of the Debenture Holders' Committee were in violation of the Committee's obligations under the Settlement Agreement, * * *." Yet no order was made or could be made against the absent Committee.

(3) Fidelity urges, in effect, that no injurious consequences will be visited upon the absent Committee or the debenture holders because the order runs in their favor. It points out that Fidelity has already complied with that part of the order requiring it to exchange the securities and deposit the old debentures in court. We think it more than doubtful whether the form of the relief granted is of any consequence, even though it is favorable to the absent party. See Young v. Powell, 5 Cir., 179 F.2d 147, 151-152. It is the relief sought that determines indispensability, and here Fidelity asked that the court order the agreement to be performed. At that time, an order could very well adversely affect the debenture holders. By bringing the supplemental complaint, and by virtue of the order entered, Fidelity has gone ahead and exchanged the debenture holders' past due obligations for 30-year income bonds, without the debenture holders being heard—an exchange Fidelity was instructed by the Committee not to make.

(4) Finally, it is evident that the decision below, in the absence of the Debenture Holders' Committee, is not equitable. We know of no reason, and none is shown, why the absent debenture holders and the Committee could not challenge the validity of the exchange, or why they are otherwise bound by the provisions of the order, or bound to accept as satisfactory what Consolidated might do by way of performance of its obligations under the Settlement Agreement or under the court's order.

Fidelity contends that it had authority to bring the action and bind the debenture holders by virtue of the Debenture Holders' Agreement of 1939, which it says was incorporated by reference into the Settlement Agreement. Even conceding that the 1939 agreement was incorporated into the Settlement Agreement for any purpose other than to show the authority of the Debenture Holders' Committee to enter into it (a question not entirely without difficulty) we find nothing in the 1939 agreement authorizing this action by Fidelity or purporting to bind the debenture holders. The provisions of the deposit agreement of 1939 appear to make Fidelity a depositary only, and to grant certain powers to it, including the power to bring suit to collect the original obligations. That agreement, however, specifically reserved to the Debenture Holders' Committee, and not to Fidelity, the right "[t]o negotiate with the Pioche Company, [a] settlement for the purpose of avoiding or terminating litigation * * *." and the power "[t]o determine all details relating to the carrying out of this Agreement and any arrangement or settlement negotiated as above provided or involved in the collection, by litigation or otherwise, of the sums so due and payable." We may add that a party to a contract may assign rights under it, but he cannot assign obligations.

In summary this would appear to be a case where a trust company, not a party to a contract, asks that the contract be interpreted and the rights and obligations of both parties to it be defined and enforced, with only one party to the contract being before the court. It is a situation where the trust company, without a showing of authority, asks that the rights of the absent party be disregarded, and that the company be permitted to perform in the

place and stead of such party to the extent that the latter is obligated to perform, and, further, that the party before the court be required to accept the company's volunteer performance as the equivalent of performance by the absent party.

Reversed with directions to dismiss.