**ILAN–GAT ENGINEERS, LTD., A.G./S.A., Appellant,**

v.

**ANTIGUA INTERNATIONAL BANK, et al.**

No. 80–1951.

United States Court of Appeals, District of Columbia Circuit.

Argued May 20, 1981.

Decided July 27, 1981.

---

William J. Conti, Washington, D.C., with whom Judson A. Gould, Washington, D. C., was on the brief, for appellant.

Before ROBINSON, Chief Judge, and TAMM and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The plaintiff, Ilan-Gat Engineers, Ltd. (Ilan-Gat), a Swiss corporation whose principal place of business is in Israel, brought this action against the defendants on alternate theories of liability. If Antigua International Bank (AIB) is a bona fide corporation and Siegel its authorized agent, the plaintiff seeks relief from the corporation for breach of a settlement agreement. If not, Ilan-Gat seeks relief from Siegel, AIB's putative agent and only known shareholder, in his individual capacity. In addition, AIB counterclaims for its damages attributable to the plaintiff's alleged breach of the same agreement.[1]

In the proceedings below, the plaintiff was unable to obtain discovery of certain information, even after the court ordered compliance. On the eve of trial, at a hearing on sanctions, the defendants argued for the first time that the court should dismiss the case on the ground that the corporate defendant was both an indispensable party and an alien whose presence destroyed diversity jurisdiction. The magistrate hearing the case delayed the imposition of sanctions to allow the defendants to file that motion in writing. She ultimately granted it and dismissed the case because she thought she had no power to impose sanctions in a case in which she lacked subject matter jurisdiction over the controversy.

We find that the magistrate erred both in failing to impose appropriate sanctions and in concluding that the corporate defendant was an indispensable party given the situation before her. We therefore reverse and remand for further proceedings not inconsistent with this decision.

## I. BACKGROUND

### A. *The Dispute*

On May 1, 1978, in Jerusalem, Israel, Ilan-Gat entered into a contract with AIB executed "For and on behalf of Antigua International Bank By s/Stanley Z. Siegel." *See* Appendix of Appellant (App.) at 110–12. The contract called for Ilan-Gat to perform construction and certain related sewage work on three sites in Antigua, West Indies. Two of the sites are hotels owned by the government of Antigua for which AIB is purportedly financing the construction. The third site is a banking facility on land purportedly owned by AIB and

---

1. The defendants filed a single answer presenting their defenses and counterclaim. Because the defendants claim that Siegel was the authorized agent of a bona fide corporation, the counterclaim is presumably made by AIB alone.

from which AIB intends to conduct a commercial banking business some day.

On February 22, 1979, this contract, which was then partially performed, was superseded by a second agreement. This settlement agreement detailed Ilan-Gat's remaining duties and terminated its participation in construction effective April 4, 1979, and defined all other rights, duties, and liabilities of the parties vis-à-vis one another. *See* App. at 120–22. The agreement, which had been drafted by Siegel, a Washington, D. C., lawyer, was signed in Antigua; Siegel signed it on behalf of AIB.

Pursuant to the settlement, between February 22, 1979, and April 4, 1979, the date on which Ilan-Gat's responsibilities under the contract were to end, AIB paid Ilan-Gat $100,000 in three payments. The agreement called for four additional payments between May 5, 1979, and August 5, 1979, totalling $150,000. These payments have never been made.

### B. *The Proceedings Below*

Ilan-Gat filed a complaint on October 2, 1979, seeking the $150,000 still due under the terms of the settlement agreement, plus an additional $15,000 in consequential damages such as travel costs and attorneys' fees. Ilan-Gat seeks relief from either Siegel or AIB depending on whether Siegel acted as the authorized agent of a bona fide corporation when he signed the settlement agreement.

In their answer, the defendants admit the existence of the settlement contract and their failure to make the final payments to Ilan-Gat. They maintain, however, that their liability for these payments was contingent upon Ilan-Gat's performance of its final duties. They allege that Ilan-Gat failed to perform these duties properly, and counterclaim for $150,000 in damages.

On November 6, 1979, at the first status call, the judge set a discovery deadline of March 31, 1980, and a trial date of May 28, 1980. Thereafter, the defendants failed to comply with the plaintiff's discovery requests; at one point Siegel even refused to allow the plaintiff to complete his deposition.

On March 10, 1980, the plaintiff filed a motion for an order compelling discovery and for sanctions. On March 31, 1980, the day discovery was to end, the defendants' lawyers moved for permission to withdraw from the case. They gave as their reason the inability of "the movant" and the defendants to "coordinate their efforts during the discovery and trial preparation stage of these proceedings" and resultant "irreconcilable differences . . . which make it impossible to maintain an effective attorney-client relationship." Motion for Withdrawal of Appearance (Mar. 31, 1980). On April 3, the magistrate handling discovery ordered compliance by April 14, and the judge granted the motion for withdrawal as counsel but noted that the trial date remained May 28.

Thereafter, the defendants continued to refuse to comply with two major discovery requests. They refused to identify the owners of AIB other than Siegel, who purportedly owns forty percent of the corporation. The defendants assert that disclosure would breach the attorney-client privilege. They also maintain that Siegel is a fiduciary for the other owners, although they have made contradictory assertions about the existence of any trust document.

Plaintiff contends that information about the other owners of AIB is needed for two reasons. The defendants have filed a report, prepared by a small engineering firm, giving a negative evaluation of the plaintiff's work. If the members of this firm, or any of the defendants' other witnesses on the counterclaim, are also owners of AIB, the plaintiff will be able to use the witnesses' financial interest to impeach their testimony.

In addition, depending on the number and identity of the other owners, AIB may not be a bona fide corporation. It may be that the other owners are members of Siegel's family and that he has not treated the corporation as a distinct entity. Or the corporation may have fewer than the minimum number of shareholders required by

Antiguan law. Or some of the shareholders may, in violation of Antiguan law, be officials of the Antiguan government. According to the plaintiff, under Antiguan law, Siegel and any other shareholders will be individually liable for AIB's debts if the corporation lacks the requisite number of qualified shareholders.

The plaintiff was also unsuccessful in obtaining more particular information about the defendants' counterclaim so that a defense could be prepared. In their answer, the defendants claimed damages due to the plaintiff's failure to perform certain construction work and purchase certain materials, and they attached a report prepared by Gordon, Belizaire and Partners, an engineering firm. During discovery, the defendants said they could not make any more particular statements describing the plaintiff's breach. The report was very short and conclusory, and it included many unsubstantiated statements. With few exceptions, it did not evaluate plaintiff's work in light of the technical drawings, plans, and blueprints, which would have indicated the work plaintiff was expected to perform and, therefore, whether plaintiff had failed to perform under the terms of the agreement.

Ilan-Gat was unable to analyze the conformance of the finished work with the specifications because, on April 4, 1979, at the insistence of the defendants, the plans, drawings, and blueprints were transferred to defendants' authorized representatives; according to Siegel's own testimony, Ilan-Gat was expected to transmit all these papers to the defendants and was not to retain copies. Thereafter, defendants relied on the non-conformance of the plaintiff's work to these specifications in making the counterclaim *and* made repeated assertions that they could not turn over the documents because the documents no longer existed. In his last deposition, however, Siegel, who had denied their existence in his earlier deposition, admitted the existence of the documents. The defendants also failed to turn over other papers, including accounting records, relevant to the counterclaim.[2]

On May 2, 1980, defendants' new counsel consented to proceed before a magistrate, and trial was scheduled for July 14, 1980. On June 6, 1980, there was a hearing on the plaintiff's April 18, 1980, motion for entry of a default judgment and other sanctions, and the magistrate was inclined to enter a default judgment against both defendants and dismiss the counterclaim. Because the defendants argued that AIB was an indispensable party whose presence destroyed jurisdiction, the magistrate deferred entry of any formal ruling on sanctions to give the defendants time to file a written motion on that point.

On June 17, 1980, less than a month before the new trial date, the motion was filed. The plaintiff opposed the motion and argued that there was jurisdiction over AIB, and that, if there was not, the plaintiff should be allowed to amend the complaint and proceed against Siegel alone because AIB was not an indispensable party.

On July 1, 1980, the magistrate entered a memorandum opinion granting the defendants' motion and dismissing the action. The magistrate held that her lack of subject matter jurisdiction precluded any ruling on sanctions. From that order, Ilan-Gat appealed. The defendants have not made any appearance before this court.

## II. SANCTIONS

As noted above, the court held that AIB was an indispensable party, and that there was no jurisdiction over AIB, an alien corporation, and therefore dismissed the action. The court assumed that lack of subject matter jurisdiction precluded the consideration of sanctions:

The court makes this finding that the motion to dismiss should be granted with some reluctance. One of the prevailing movants, Siegel, has conducted himself throughout these proceedings in a man-

---

2. For example, despite the plaintiff's prior request for such materials, Siegel indicated for the first time on May 20, 1980 the existence of

documents that he claimed were accountings rendered by the plaintiff to the defendant during the course of the construction work.

ner which, in any litigant, would be unseemly, and which, in someone who represents himself as being a member of the bar and a practicing attorney has been reprehensible.

Since the motion to dismiss is granted on the ground that this court is without jurisdiction to hear this case, it follows that it has no authority to rule on . . . the motion for sanction . . . .

App. at 45–46.

■ The magistrate erred in thinking that the challenge to the court's subject matter jurisdiction precluded the imposition of sanctions. Federal Rule of Civil Procedure 37(b)(2) authorizes the imposition of sanctions for failure to comply with discovery orders by the court in which an action is pending. Under that rule, a court can impose a variety of sanctions including costs, attorneys' fees, dismissals, and default judgments.[3] We conclude that, with the possible exception of a default judgment against AIB, whatever defaults or sanctions were appropriate on June 6, 1980, should have been imposed on that date regardless of the merits of defendants' challenge to the court's subject matter jurisdiction.

■ Assuming that the alien citizenship of AIB made subject matter jurisdiction doubtful, the court should still have been guided by the principle that courts always have jurisdiction to determine their jurisdiction. *See, e. g., United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). The court has power to compel discovery on jurisdictional issues, *see, e. g., Stamatakos v. Hunter Shipping Co.*, 49 F.R.D. 23 (E.D.Pa.1969), and can impose sanctions such as costs and fees even in the absence of subject matter jurisdiction, *see Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976) (defendant's challenge to subject matter jurisdiction made only after entry of default judgment for failure to comply with discovery orders; appeals court remanded for hearing on jurisdiction but imposed costs and fees on defendant). The court below erred, therefore, in thinking it could not impose any sanctions against AIB.[4]

---

3. Fed.R.Civ.P. 37(b)(2) states:

*Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

4. If there is subject matter jurisdiction over AIB, a default judgment can, of course, be entered against it. Since we conclude, *see* Part III *infra*, that the court misapplied the rules concerning indispensable parties, we need not consider at this time whether joinder of AIB would in fact destroy diversity jurisdiction.

■ With regard to Siegel, the court erred in thinking that there was any limit to its ability to impose appropriate sanctions. There is no lack of subject matter jurisdiction over the dispute between Ilan-Gat and Siegel. Although a court might decline to adjudicate that dispute if the joinder of an indispensable party would destroy diversity jurisdiction, the absence of that party is not a jurisdictional defect. *See, e. g., Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 165, 6 L.Ed. 289 (1825) (Marshall, C. J.) ("This objection does not affect the jurisdiction, but addresses itself to the policy of the court."); *Fulton Lodge No. 2, AFL–CIO v. Nix*, 415 F.2d 212, 220 (5th Cir. 1969); *Warner v. First Nat. Bank of Minneapolis*, 236 F.2d 853 (8th Cir.), *cert. denied*, 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956); *Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co.*, 202 F.2d 944 (9th Cir.), *cert. denied*, 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400 (1953). If the court below considered entry of a default judgment against Siegel appropriate as a sanction, it should have granted the plaintiff's motion to amend the complaint to proceed against Siegel alone and then entered the default judgment.

■ We note that the lower court's failure to determine sanctions on June 6, 1980, was not harmless; it is most likely that the court would have imposed sanctions, had it known it had the power to do so. In subsequent pleadings filed below, the plaintiff stated that the court actually granted default judgments against both defendants and dismissed their counterclaim and merely deferred entry of the order pending a determination of subject matter jurisdiction. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss at 1 (July 7, 1980); Plaintiff's Memorandum of Points and Authorities in Support of its Motion to Amend the Complaint at 1 (June 7, 1980). Even the defendants reported that the court "was inclined to enter a default judgment against both defendants and . . . dismiss the Defendants [sic] counterclaim because the Defendants failed to comply with the orders compelling discovery." Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Amend the Complaint at 1 (July 7, 1980). We therefore remand to give the lower court the opportunity to reconsider the imposition of sanctions in the light of a proper understanding of its ability to control the conduct of the parties before it.[5]

## III. Rule 19: JOINDER OF PERSONS NEEDED FOR A JUST ADJUDICATION

Under rule 19(a), a person should be joined if his presence will not deprive the court of jurisdiction and if, in his absence, (1) complete relief cannot be accorded those already parties, (2) he claims an interest related to the action and may be prejudiced by the continuation of the action in his absence, or (3) his absence may prejudice someone already a party.[6] If joinder is not

5. Although, as discussed in text, the pleadings submitted by both sides subsequent to the June 6, 1980, hearing indicate that the magistrate was ready to enter default judgments against the defendants, the magistrate's final order disposing of the case (and subsequent to those pleadings) states otherwise: "Following defendants' refusal to comply with several orders of the court in regard to discovery, plaintiff's motion to dismiss defendants' counterclaim, and to enter a default on the complaint was granted insofar as the counterclaim, and denied as to the default." App. at 40. We express no view as to what sanctions were about to be imposed at the hearing, nor do we see any point in attempting to resolve this inconsistency. On remand, the court will simply determine the appropriate sanctions on the basis of the record as of June 6, 1980.

6. Fed.R.Civ.P. 19(a) states:

*Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made

feasible because it will deprive a court of jurisdiction, analysis continues under rule 19(b).

 That section states that if a person described in (a) cannot be made a party to an action, the court "shall determine whether in equity and good conscience the action should proceed" in his absence or be dismissed. Fed.R.Civ.P. 19(b).[7] The factors to be considered in making this determination include the extent to which a judgment in the absence of the "non-joinable" party will prejudice him or those already parties, the extent to which prejudice can be avoided by shaping the relief, whether a judgment in his absence will be adequate, and whether the plaintiff will have an adequate remedy if the action is dismissed. There are, of course, cases in which these factors cannot be properly applied at the pleading stage. In such instances, it is "appropriate to defer decision until the action [is] further advanced." Fed.R.Civ.P., *Adv.Comm. Notes*, 39 F.R.D. 69, 99 (1966). *See, e. g., Reid v. Reid*, 269 F.2d 923 (10th Cir. 1959).

In the case at bar, the magistrate did not analyze the case before her in terms of the factors enumerated in rule 19(b), nor did she consider whether it would be appropriate to defer the indispensable-party determination until additional facts were known. Instead, she held that AIB was an indispensable party and dismissed the action[8] on the basis of several conclusory statements addressing a single factor. She began by noting: "It is the problem of prejudice to the parties which constrains this court to

deny the motion for leave to amend." *See* App. at 42. She then stated that relief was sought from AIB and Siegel in the alternative and concluded that AIB was an indispensable party. Apparently, the magistrate thought "equity and good conscience" demanded the dismissal of the action, rather than its continuation against Siegel alone, because the defendants would otherwise have to defend two law suits.

 If the defendants had made their motion early in these proceedings, the magistrate's decision might well have been reasonable. *See, e. g., Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) ("[T]he defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. After trial, however, if the defendant has failed to assert this interest, it is quite proper to consider it foreclosed."). The defendants made the motion, however, after months of delay and outrageous refusals to obey discovery orders, when the court was about to impose sanctions. There are several reasons why the magistrate's determination was an error under these circumstances.

First, the court failed to realize that there was prejudice on both sides of the balance in the case at bar. The defendants' delay in contesting jurisdiction was costly to the plaintiff in terms of both time and money. If the plaintiff were allowed to proceed against Siegel alone, neither AIB

---

a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

**7.** Fed.R.Civ.P. 19(b) states:

*Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first,

to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**8.** As the court below recognized, if AIB is not an indispensable party, and its presence destroys jurisdiction, Ilan-Gat should be allowed to amend the complaint and proceed against Siegel alone.

nor Siegel would lose any legal rights. The only prejudice to the defendants in allowing an action against Siegel alone is the cost of duplicate litigation—and that is a cost that the defendants have already, to a large extent, imposed on the plaintiff. Under these circumstances, it was error for the magistrate to consider only the prejudice to the defendants of duplicate litigation. *See, e. g., Parker Rust-Proof Co. v. Western Union Tel. Co.*, 105 F.2d 976, 979–80 (2d Cir. 1939) (error for lower court not to consider prejudice to plaintiffs when defendants made untimely indispensable-party motion).

▉ Second, the defendants' failure to make a timely motion should have been considered in weighing the extent to which the defendants would be prejudiced by separate actions. The defendants' motion was equivalent to a rule 12(b)(7) motion to dismiss for failure to join an indispensable party in a suit between Ilan-Gat and Siegel. Such motions should be made early in the proceedings, and, though the motion is not automatically waived when not made in a responsive pleading, a court should, "in equity and good conscience," consider the timing of the motion, and the reasons for the delay, in weighing the prejudice to the moving party. *See, e. g., Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250 (8th Cir. 1978); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1359 (1969).

▉ Third, the court failed to consider whether more facts were needed before making the indispensable party determination given the rather unusual situation before it. If the plaintiff had been allowed to complete discovery regarding ownership of AIB, which had been underway for months, the court would have known whether AIB was a bona fide corporation under the laws of Antigua or whether Siegel and the other

shareholders are individually liable for its debts. In this context, we note that the burden was on the defendants, as the moving party,[9] to show that continuation of the action in AIB's absence would prejudice them. *See, e. g., Meyerding v. Villaume*, 20 F.R.D. 151 (D.Minn.1957); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1359 (1969). Continuation of the action without AIB will not, of course, prejudice them if AIB does not exist. Given that AIB's existence as a valid legal entity was a sharply contested fact whose resolution the defendants had so outrageously thwarted, the court should have placed on the defendants the burden of proving that AIB had the requisite number of shareholders who were not Antiguan officials.[10]

## IV. PROCEEDINGS ON REMAND

On remand, the district court should reconsider the indispensable party motion only after imposing whatever sanctions it considers appropriate, other than entry of a default judgment against AIB. If it is necessary to reconsider the motion,[11] the court should make the determination on the basis of a more complete factual record regarding the ownership of AIB. Siegel may seek in camera review of some of these issues if necessary to preserve his fiduciary responsibilities.

If the facts indicate that AIB is not a bona fide corporation, then it is obviously not an indispensable party, and the suit should be allowed to proceed against Siegel in his individual capacity. If, on the other hand, AIB is a bona fide corporation, then the court must determine whether AIB is an indispensable party in light of the rule 19(b) principles outlined in Part III *supra*. If AIB is indispensable, then the court must

---

**9.** For purposes of this analysis, the defendants' motion is equivalent to a motion to dismiss for failure to join an indispensable party under rule 12(b)(7).

**10.** We do not hold that defendants must always prove the existence of a bona fide corporation before the court can rule on joinder of an allegedly indispensable corporate party whose legal status a plaintiff has challenged. But in

this case, where corporate existence is a sharply contested issue, the defendants' obstructive acts justify placing such a burden upon them.

**11.** There may be no need to reconsider the motion. If a default judgment is entered against Siegel, the plaintiff may be satisfied with that judgment and may not want to proceed also against AIB pending the satisfaction of that judgment.

decide whether joinder is consistent with federal jurisdiction.

## V. CONCLUSION

Although a federal court is a court of limited jurisdiction, it always has the power to retain jurisdiction of a case for the time necessary to determine its jurisdiction, and during that period it has power to control the behavior of parties before it. The court below was therefore in error when it felt constrained to withhold sanctions while dismissing the case for inability to join an indispensable party; the court was not without power to impose sanctions despite the defendants' challenge.

The district court also erred in finding AIB an indispensable party without giving proper attention to all the relevant factors in the procedural and factual situation before it. The defendants' motion must be reconsidered in light of the equitable principles of rule 19(b). We therefore reverse and remand for further proceedings not inconsistent with this opinion.

*It is so ordered.*