**In re UNITED STATES PAROLE COMMISSION, Petitioner.**

No. 85–1205.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 2, 1985.

Decided June 17, 1986.

Rehearing En Banc Granted and Opinion Vacated Sept. 2, 1986.

---

Nathan Dodell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for petitioner.

E. Charles Rowan, Jr., Washington, D.C., with whom Lynda S. Mounts and Stuart J. Bassin, Washington, D.C., were on brief, for respondent.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion of the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

The United States Parole Commission petitions for a writ of mandamus directing the District Court to vacate an order denying the Commission's motion to dismiss a pending case for lack of jurisdiction. In the alternative, the Commission asks that the writ require the court to transfer the case to the Western District of Texas.[1] We conclude that the District Court did not err in asserting jurisdiction or abuse its discretion in refusing to transfer. We accordingly deny the Commission's petition.

## I. BACKGROUND

The Parole Commission and Reorganization Act[2] authorizes the Commission to promulgate guidelines for determining when federal prisoners will become eligible for parole consideration.[3] The Commission's guidelines combine an "offense se-

---

1. The transfer is sought pursuant to 28 U.S.C. § 1404(a) (1982).

2. 18 U.S.C. §§ 4201–4218 (1982).

3. *Id.* § 4203(a)(1) (1982). The Act bears relevance only until November 1, 1986, when its repeal becomes effective. See Pub.L. No. 98–473, tit. II, §§ 218(a)(5), 235, 98 Stat. 2027, 2031 (1984).

verity" factor, which is a rating of the gravity of the prisoner's crime, with a "salient factor score," which utilizes the prisoner's recidivistic characteristics to predict the potential risk of parole violation.[4] In 1983, the Commission revised the guidelines and upgraded the offense-severity rating of a number of crimes. In the process, breaches of the National Firearms Act,[5] all of which were formerly in the fourth or "high" category, were elevated to category five when the criminal conduct included illegal possession of a machine gun, and to category six when illegal possession of a firearm silencer was involved.[6] The effect of the reclassification is to delay parole consideration for these offenders by approximately one to four years.[7]

On December 4, 1982, Stephen Pearson, the respondent, was convicted of violating the National Firearms Act by illegally possessing a machine gun and a silencer.[8] He is presently serving his nine-year sentence in a federal correctional institution in La Tuna, Texas. Following a parole hearing in April, 1984, the Commission, applying the 1983 guidelines, notified Pearson that he would be eligible for parole within 52 to 64 months from the date of his imprisonment commenced.[9] Both the Commission's Regional Board and its National Appeals Board affirmed this determination.[10]

Having thus exhausted his administrative remedies, Pearson filed a *pro se* application for a writ of habeas corpus in the District Court for the Western District of Texas challenging the constitutionality of the reclassification of his offense.[11] A month later, Pearson initiated identical litigation in the District Court for the District of Columbia.[12] After that court appointed counsel to represent him, Pearson amended his complaint to seek declaratory and injunctive relief in addition to a habeas corpus writ.[13] Pearson asserts that the upgrading of the severity of firearms violations to a category including such heinous crimes as sexual exploitation of children and forcible rape violates his right to equal protection of the laws, and is arbitrary, capricious and an abuse of discretion under the Parole Commission and Reorganization Act.[14] He also asserts that application to him of the 1983 guidelines, which were not in effect when he was sentenced, infringes

4. 28 C.F.R. § 2.20 (1985).

5. 26 U.S.C. § 5861 (1982).

6. Compare United States Parole Commission Offense Behavior Severity Index, 28 C.F.R. § 2.20 (1985) with Paroling Policy: Guidelines for Decision-Making, 28 C.F.R. § 2.20 (1982).

7. For example, an inmate who has a very good (8 to 10) salient-factor score would become eligible for parole consideration in 14 to 20 months with an offense-severity rating of four, but would serve 24 to 36 months with an offense-severity rating of five. An inmate with a poor (0 to 3) salient-factor score would become eligible for parole consideration within 34 to 44 months with an offense-severity score of four, but within 78 to 100 months with an offense-severity rating of six. See 28 C.F.R. § 2.20 (1985).

8. See Amended Complaint for Declaratory and Injunctive Relief and Application for Writ of Habeas Corpus, *Pearson v. United States Parole Comm'n*, Civ. No. 84-3495 (D.D.C.) (filed Jan. 10, 1985), ¶ 10, Appendix for Respondent (R.App.) (3) 3 [hereinafter cited as Amended Complaint].

9. Pearson was assigned a salient-factor score of six, or "good." See Amended Complaint, *supra*

note 8, ¶ 11, R.App. (3) 3. The current guidelines specify that an inmate who has a "good" salient-factor score and whose offense falls within category six is eligible for parole consideration in 52 to 64 months. 28 C.F.R. § 2.20 (1985).

10. Amended Complaint, *supra* note 8, ¶¶ 19–22, R.App. (3)4.

11. Complaint, *Pearson v. Southerland*, Civ. No. EP–84–CA–372 (W.D.Tex.) (filed Oct. 18, 1984); see Brief for Petitioner at 2–3. After commencing the present suit, Pearson moved under Fed. R.Civ.P. 41(a)(2) to dismiss the action in the Western District of Texas, Brief for Petitioner at 2, and that court dismissed without prejudice. *Pearson v. Southerland*, Civ. No. EP–84–CA–372 (W.D.Tex. May 16, 1985) (order), R.App. (9).

12. Civil Rights Complaint with Jury Demand, *Pearson v. Bear*, No. 84–3495 (D.D.C.) (filed Nov. 19, 1984), R.App. (1).

13. See Amended Complaint, *supra* note 8, at 9–11, R.App. (3) 9–11.

14. *Id.* at 9–10, R.App. (3)9–10.

the ex post facto prohibition of the Constitution.[15] Should Pearson prevail on these claims, he possibly could be considered for parole under the earlier guidelines, which set a presumptive parole date of 20 to 26 months, instead of 52 to 64, from the date his incarceration began.[16]

The Commission moved to dismiss the case for want of jurisdiction, or in the alternative to transfer the case to the Western District of Texas.[17] The Commission argued that since Pearson seeks ultimately an earlier parole date, he is actually challenging the fact or duration of his confinement, and under the Supreme Court's ruling in *Preiser v. Rodriguez*[18] can do so only through habeas corpus.[19] The court was without subject-matter jurisdiction over the habeas corpus application, the Commission insisted, because it lacked personal jurisdiction over Pearson's immediate custodian, the warden of the penal facility in which Pearson is confined.[20] Alternatively, the Commission sought transfer of the case to the Western District of Texas, maintaining that suits filed by prisoners neither sentenced nor confined in the District of Columbia present factors that are more conveniently triable at the place of confinement, while acceptance of such suits in the District of Columbia will encourage a concentration of prisoner litigation from all over the country, and thereby impose a heavy burden on both the courts and local counsel.[21]

The District Court denied the Commission's motion.[22] The court first rejected the argument that habeas corpus was Pearson's exclusive remedy:

> *Prieser [sic]* specifically applied only in those cases wherein a prisoner is challenging "the very fact or duration of his confinement." Here, plaintiff is not necessarily seeking an early release. Rather, he is seeking to have certain parole regulations declared illegal, and to have certain other parole regulations applied to his case. Thus, it could be said that he is seeking only a determination of his parole consistant [sic] with the law. Therefore, plaintiff may properly bring this action for declaratory and injunctive relief, as well as in habeas corpus.[23]

The court also held that even if habeas corpus were Pearson's sole remedy, he faced no jurisdictional barrier because the Commission, over which the court had personal jurisdiction, was Pearson's custodian for purposes of suit; "[i]t is the Commission," said the court, "which is the entity 'making the decision to keep the petitioner

---

**15.** *Id.* at 10–11, R.App. (3) 10–11; see U.S. Const. art. I, § 9, cl. 3.

**16.** See Brief for Respondent at 3 n. 2.

**17.** Motion to Dismiss or to Transfer, *Pearson v. United States Parole Comm'n*, Civ. No. 84–3495 (D.D.C.) (filed Feb. 8, 1985), at 1, R.App. (4)1.

**18.** 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**19.** We discuss *Preiser* and its implications for this case in Part II(B)(1) *infra*.

**20.** Memorandum of Points and Authorities in Support of Motion to Dismiss or to Transfer, *Pearson v. United States Parole Comm'n*, Civ. No. 84–3495 (D.D.C.) (filed Feb. 8, 1985), at 2–8, R.App. (4) 3–9.

**21.** *Id.* at 10–13, R.App. (4)11–14. The Commission also urged that the action then still pending in the Western District of Texas robbed the District Court here of jurisdiction over this suit because of 28 U.S.C. § 2244(a) (1982), which states:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus ... if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore presented and determined, and the judge of court is satisfied that the ends of justice will not be saved by such inquiry.

The District Court disagreed on the ground that the Texas action had neither inquired into the facts of Pearson's detention nor reached a final determination., *Pearson v. United States Parole Comm'n*, Civ. No. 84–3495 (D.D.C. Mar. 15, 1985) (*Order*) at 4–5, R.App. (6)5–6 [hereinafter cited as *Order*]. This ruling is not attacked in the Commission's mandamus petition.

**22.** *Order, supra* note 21, at 5, R.App. (6)6.

**23.** *Id.* at 2–3, R.App. (6)3–4 (citations omitted).

in custody,' by applying to the petitioner its revised regulations." [24] The court further concluded that the District of Columbia was the more convenient forum in which to litigate Pearson's claims, pointing out that " 'the decision was made here, the decision makers are here, as well as any information the decision makers may have relied upon in making their determination.' " [25] The Commission then petitioned this court for a writ of mandamus.

## II. THE MOTION TO DISMISS

### A. *Review by Mandamus*

Mandamus is an extraordinary remedy, to be afforded only in exceptional circumstances.[26] The Supreme Court has carefully circumscribed issuance of the writ, recognizing that it "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " [27] As the Court has explained, "only exceptional circumstances amounting to a judicial 'usurpation of power' will justi-

fy the invocation of this extraordinary remedy," [28] and the party seeking the writ must demonstrate that his right to it is "clear and indisputable." [29]

The Commission asserts that the District Court usurped judicial power by exercising jurisdiction over Pearson's case. It argues that the District Court misconstrued Supreme Court precedent and decisions of this court in ruling that habeas corpus is not Pearson's exclusive remedy and in considering the Commission as Pearson's custodian for purposes of a habeas corpus challenge to the Commission's guidelines.[30]

Whether Pearson's thesis launches an attack on the fact or duration of confinement, which under *Preiser* is cognizable only in a habeas corpus proceeding,[31] is not nearly as clear as the Commission would have us believe. Indeed, the District Court relied on a post-*Preiser* decision of this court strongly supporting the conclusion that it had jurisdiction.[32] And even if we were to conclude that the District Court simply erred in entertaining Pearson's suit, it would not follow that mandamus lies.[33] The District Court had jurisdiction to deter-

24. *Id.* at 3, R.App. (6)4, quoting *Procacci v. Sigler,* 61 F.R.D. 5, 7 n. 1 (D.D.C.1973).

25. *Id.* at 4, R.App. (6)5, quoting *Procacci v. Sigler, supra* note 24, 61 F.R.D. at 7.

26. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193, 196 (1980); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, 310 (1967); *In re Scott,* 228 U.S.App.D.C. 278, 282, 709 F.2d 717, 721 (1983) (per curiam); *Starnes v. McGuire,* 168 U.S.App.D.C. 4, 15, 512 F.2d 918, 929 (1974) (*en banc*).

27. *Will v. United States, supra* note 26, 389 U.S. at 95, 88 S.Ct. at 273, 19 L.Ed.2d at 310, quoting *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943); see also *Allied Chem. Corp. v. Daiflon, supra* note 26, 449 U.S. at 35, 101 S.Ct. at 190, 66 L.Ed.2d at 196.

28. *Will v. United States, supra* note 26, 389 U.S. at 95, 88 S.Ct. at 274, 19 L.Ed.2d at 310, quoting *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566, 1572 (1945).

29. *Will v. United States, supra* note 26, 389 U.S. at 96, 88 S.Ct. at 274, 19 L.Ed.2d at 310–311; *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106, 112 (1953).

30. Brief for Petitioner at 5–14.

31. See Part II(B)(1) *infra.*

32. The District Court followed *In re Chatman-Bey,* 231 U.S.App.D.C. 72, 718 F.2d 484 (1983) (per curiam), in which we held that an inmate's challenge to the Bureau of Prison's method of computing parole eligibility for prisoners serving consecutive sentences did not attack the fact or duration of confinement, and therefore was not restricted to a habeas corpus proceeding. *Id.* at 75–76 & n. 7, 718 F.2d at 487–488 & n. 7; see *Order, supra* note 21, at 3, R.App. (6)4.

33. *National Right to Work Legal Defense v. Richey,* 167 U.S.App.D.C. 18, 21, 510 F.2d 1239, 1242 (per curiam), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975) ("[e]ven if the district judge's finding of jurisdiction should ultimately be held to be erroneous, his determination that jurisdiction does exist is not the clear usurpation of judicial power traditionally required for the issuance of mandamus").

mine its own jurisdiction [34] and mandamus may not substitute for an appeal.[35] If lack of jurisdiction is not clear, but merely doubtful, the writ should be denied.[36]

We thus have serious misgivings about the propriety of the Commission's petition for mandamus insofar as it seeks to set for naught the District Court's retention of Pearson's prayer for declaratory and injunctive relief. We need not, however, pursue the question any further. We are satisfied that there is jurisdiction to order relief of that nature,[37] though not Pearson's release from confinement,[38] and the suitability of mandamus to test the ruling on the Commission's motion to transfer is clear.[39]

### B. *Exclusivity of Habeas Corpus*

■ Pearson, we repeat, seeks declaratory and injunctive relief, contending that a 1983 parole guideline violates the Parole Commission and Reorganization Act and is unconstitutional both on its face and as applied to him. On the same theory, he has also applied for a writ of habeas corpus.[40] Jurisdiction over a habeas corpus application, however, is dependent upon the court's authority over the petitioner's custodian,[41] and only recently we rejected the notion, which Pearson [42] and the District Court [43] share, that the Commission may properly be viewed as the custodian of one in Pearson's situation.[44] Rather, we held, "for purposes of challenging a Parole Commission action on the sentence a prisoner is currently serving in a federal penal facility, the warden of that facility is the prisoner's custodian within the meaning of" the federal habeas corpus statute.[45] It follows that, if habeas corpus is Pearson's exclusive remedy, as the Commission insists, declaratory and injunctive relief would for that reason be unavailable to him, and the District Court would be unable to consider his claims in a habeas corpus proceeding because it lacks jurisdiction over his custodian.

### —(1) *The* Preiser *Decision*

Addressing, then, the question whether Pearson is restricted to habeas corpus in his quest for a judicial ruling on the validity of the guideline under attack, our starting point is the Supreme Court's decision in *Preiser v. Rodriguez.*[46] There, three inmates of state prisons instituted Section 1983 actions,[47] joined with applications for writs of habeas corpus, challenging the deprivation of goodtime credits in prison

**34.** *Philbrook v. Glodgett,* 421 U.S. 707, 721, 95 S.Ct. 1893, 1902, 44 L.Ed.2d 525, 537 (1975); *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126, 127 (1908); *Bouchet v. National Urban League, Inc.,* 235 U.S.App.D.C. 37, 43, 730 F.2d 799, 805 (1984); *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank,* 212 U.S.App.D.C. 188, 197, 659 F.2d 234, 243 (1981).

**35.** *Will v. United States, supra* note 26, 389 U.S. at 97, 88 S.Ct. at 274, 19 L.Ed.2d at 311; *Roche v. Evaporated Milk Ass'n, supra* note 27, 319 U.S. at 27, 63 S.Ct. at 941, 87 L.Ed. at 1190.

**36.** *Ex parte Chicago Rock Island & Pac. Ry.,* 255 U.S. 273, 275–276, 41 S.Ct. 288, 289, 65 L.Ed. 631, 633 (1921) ("[i]f the lower court is clearly without jurisdiction the writ will ordinarily be granted.... If, however, the jurisdiction of the lower court is doubtful, ... the writ will ordinarily be denied").

**37.** See Part II(B) *infra.*

**38.** See Part II(B)(1) *infra.*

**39.** See Part III *infra.* In so ruling, we intimate no view as to the merits of Pearson's claims, which are not presently before this court.

**40.** See Brief for Respondent at 9–11.

**41.** *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1130, 35 L.Ed.2d 443, 452 (1973); *Schlanger v. Seamans,* 401 U.S. 487, 491, 91 S.Ct. 995, 998, 28 L.Ed.2d 251, 255 (1971); see *Starnes v. McGuire, supra* note 26, 168 U.S.App.D.C. at 17–18, 512 F.2d at 931–932.

**42.** Brief for Respondent at 18–20.

**43.** *Order, supra* note 21, at 3, R.App. (6)4.

**44.** *Guerra v. Meese,* 252 U.S.App.D.C. 1, 3–4, 786 F.2d 414, 416–417 (1986) (per curiam).

**45.** *Id.* at 416 (citations omitted).

**46.** *Supra* note 18.

**47.** Actions pursuant to 42 U.S.C. § 1983 (1982).

disciplinary proceedings allegedly violative of their rights to due process and equal protection of the laws. The sole relief requested was an injunction restoring the credits, which in each case would have resulted in immediate release from prison because the conditional-release dates for all three had passed.[48]

After analyzing the history and function of the Great Writ, the Court noted that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."[49] Challenges to the fact or length of imprisonment coupled with prayers for earlier or immediate release therefrom, the Court held, were at the "core"[50] and "heart"[51] of habeas corpus, and assertable only in habeas corpus proceedings:

[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.[52]

The inmates' attack on the deprivation of their good-time credits fell within the established scope of habeas corpus because withholding the credits "was causing or would cause them to be in illegal physical confinement ... once their conditional-release date had passed."[53]

Under *Preiser*, then, habeas corpus is the exclusive remedy for a prisoner attacking the "fact or duration" of confinement and demanding "immediate or speedier release" from custody. The Court gave some indication, however, of the parameters of *Preiser's* holding by distinguishing situations outside the ambit of habeas corpus in which a prisoner could obtain relief of another character. A prisoner suing for damages, the Court declared, cannot resort to habeas corpus,[54] nor is it necessary that litigation over the conditions of prison life

---

48. *Preiser v. Rodriguez, supra* note 18, 411 U.S. at 477–481, 93 S.Ct. at 1830–1832, 36 L.Ed.2d at 443–445. The inmates had participated in a conditional-release program under New York law and earned good-time credits toward reducing the maximum term of their sentences. These credits could be lost, however, through bad behavior or other disciplinary infractions. The inmates had served enough of their sentences by the time their cases were tried that restoration of their credits would have entitled them to release forthwith. See *id.*

49. *Id.* at 484, 93 S.Ct. at 1833, 36 L.Ed.2d at 447.

50. *Id.* at 489, 93 S.Ct. at 1836, 36 L.Ed.2d at 450.

51. *Id.* at 498, 93 S.Ct. at 1840, 36 L.Ed.2d at 455.

52. *Id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

53. *Id.* at 487, 93 S.Ct. at 1835, 36 L.Ed.2d at 448. One of the *Preiser* Court's substantial concerns was that utilization of a Section 1983 action to secure earlier or immediate release through a successful attack on the fact or duration of the confinement would enable state prisoners to bypass the requirement, see 28 U.S.C. § 2254 (1982), that such prisoners exhaust available and effective state judicial remedies before resorting to federal habeas corpus. *Preiser v. Rodriguez, supra* note 18, 411 U.S. at 489–493, 93 S.Ct. at 1836–1838, 36 L.Ed.2d at 450–452.

Since federal prisoners encounter no such precondition or concomitant federal-state comity consideration, Pearson argues that *Preiser* has no application to federal prisoners at all. Brief for Respondent at 14–15. We do not subscribe to that position. As we have said, the dominant theme of *Preiser* is that release from illegal custody is the traditional function of habeas corpus, and for that it is exclusive. Since federal not less than state prisoners are affected in that manner, we adhere to the proposition implicit in the decisions that each group is subject to the dictates of *Preiser*. See, e.g., *In re Chatman-Bey, supra* note 32, 231 U.S.App.D.C. at 75 n. 7, 718 F.2d at 487 n. 7; *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 947–948 (2d Cir.1976); *Geraghty v. United States Parole Comm'n*, 579 F.2d 238, 243–244 (3d Cir.1978), *rev'd on other grounds*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

54. *Preiser v. Rodriguez, supra* note 18, 411 U.S. at 494, 94 S.Ct. at 1838, 36 L.Ed.2d at 453. The Court explained:

If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy.

*Id.* (emphasis in original).

proceed in habeas corpus.[55] Thus the *Preiser* Court contemplated that habeas corpus would be a prisoner's single remedy in some situations, but an alternative or unavailable remedy in others.

Just a year after *Preiser*, the Court shed further light upon the reach of that decision. In *Wolff v. McDonnell*,[56] an inmate of a state prison brought a Section 1983 class action alleging, among other things, that the prison's disciplinary regime, which had led to cancellation of some of the inmate's good-time credits, did not comport with due process. As relief, the action sought restoration of the credits, a plan for a due process hearing procedure in connection with withholding and forfeiture of such credits, and damages for denial of civil rights resulting from use of the existing disciplinary procedure.[57] Addressing "[a]t the threshold ... the issue whether under *Preiser* ... the validity of the procedures for depriving prisoners of good-time credits may be considered in" a Section 1983 suit,[58] the Court noted that, while *Preiser* foreclosed any actual restoration of credits in a nonhabeas action,[59] it also established the impropriety of using habeas corpus as a remedy for damages.[60] Consequently, the Court said, the inmate's damages claim was properly presented in his Section 1983 action and, in turn, "required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct,"[61] and therefore "[s]uch a declaratory judgment as a predicate to a damages award would not be barred by *Preiser*." [62] The Court went further to explain that "because under [*Preiser*] only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." [63] Accordingly, the Court "conclude[d] that it was proper ... to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled." [64]

As we read *Wolff*, the Court did not restrict this endorsement of injunctive relief to cases in which damages are sought. Of course, since damages claims are outside the purview of habeas corpus, *Preiser* presents no impediment to a declaration of invalidity of disciplinary procedures as the basis for an award of damages. But the limited injunction that the Court sanctioned was wholly unrelated to such an award; rather, it was an additional and completely different method of redressing the allegedly unconstitutional disciplinary procedures, and obviously an unavailable remedy had it been intercepted by the holding in *Preiser*. The only explanation for the Court's approval of injunctive relief from the procedures was, as the Court stated, that *Preiser* forebade "only an injunction restoring good time improperly taken." [65] It followed, then, that the declaration underpinning an award of damages for the use of those procedures could also serve as

**55.** *Id.* at 499, 93 S.Ct. at 1841, 36 L.Ed.2d at 455–456. The Court stated that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody," but added, "[t]his is not to say that habeas corpus may not also be available to challenge such prison conditions." *Id.*

**56.** 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

**57.** *Id.* at 553, 94 S.Ct. at 2973, 41 L.Ed.2d at 949.

**58.** *Id.* at 554, 94 S.Ct. at 2973, 41 L.Ed.2d at 949.

**59.** *Id.* at 554, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**60.** *Id.* at 554, 94 S.Ct. at 2973, 41 L.Ed.2d at 949–950.

**61.** *Id.* at 554–555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**62.** *Id.* at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**63.** *Id.*

**64.** *Id.* (footnote omitted).

**65.** *Id.*

the foundation of an injunction restraining further resort to them.[66]

Even more fundamentally, *Preiser* did not rule that every claim that could be pressed in a habeas corpus proceeding can be advanced only in such a proceeding.[67] On the contrary, *Preiser's* holding is limited explicitly to cases that are of the "essence," or at the "core" or "heart," of habeas corpus[68]—cases challenging "the very fact or duration of [a prisoner's] physical imprisonment" and seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment."[69] An action for declaratory or injunctive relief from a continuing violation of a prisoner's rights is not invariably of that nature, and the action before us definitely is not. Pearson's suit focuses on the guideline pursuant to which his offense was upgraded to a higher level of severity for purposes of parole eligibility. One of its requests is for an order declaring the guideline invalid and an injunction restraining its enforcement. In this aspect, the suit does not "go[] directly to the constitu-tionality of his physical confinement itself,"[70] nor does it ask for "a determination that he is entitled to immediate release or a speedier release from ... imprisonment."[71]

Success in this much of Pearson's endeavor would not automatically hasten his departure from prison. It would, of course, necessitate a redetermination of his parole-eligibility date, but an earlier date would by no means be assured. Should the current guideline be invalidated, the Commission would not inexorably be required to resort to the older guideline; it could promulgate a new guideline, or it could exercise its discretion without the benefit of any guideline at all. It could review Pearson's case and leave his present parole-eligibility date undisturbed simply by acting outside the guidelines.[72] Thus, neither a determination that the guideline in question is invalid nor an order barring its future application would usurp "the traditional function of the writ [of habeas corpus] ... to secure release from illegal custody."[73]

---

66. The declaratory judgment statute provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202 (1982). Further relief may, of course, take the form of an injunction. See, e.g., *Powell v. McCormack,* 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491, 504 (1969) ("declaratory judgment can then be used as a predicate to further relief, including an injunction"); *Vermont Structural Slate Co. v. Tatko Bros. Slate Co.,* 253 F.2d 29, 30 (2d Cir.1958) (after declaring patent invalid, court had "ample residual power ... to issue ... permanent injunction"); *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 537 (5th Cir.1978) (party obtaining declaratory judgment "may seek further relief in the form of damages or an injunction"); *Doe v. Gallinot,* 657 F.2d 1017, 1025 (9th Cir.1981) (injunction constituted further relief necessary to effectuate declaratory judgment). The injunctive relief approved in *Wolff* would be ancillary to the declaration of invalidity of the disciplinary procedures, upon which the award of damages would be predicated. See *Wolff v. McDonnell, supra* note 56, 418 U.S. at 555, 94 S.Ct. at 2973, 41 L.Ed.2d at 949.

67. The *Preiser* Court itself pointed out that, in addition to demands for damages, claims of unlawful conditions of prison confinement need not be brought in habeas corpus, *Preiser v. Rodriguez, supra* note 18, 411 U.S. at 498–499, 93 S.Ct. at 1840–1841, 36 L.Ed.2d at 455, though arguably they could be, *id.* at 499, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

68. *Id.* at 484, 489, 498, 93 S.Ct. at 1833, 1836, 1840, 36 L.Ed.2d at 447, 450, 455.

69. *Id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

70. *Id.* at 489, 93 S.Ct. at 1836, 36 L.Ed.2d at 450.

71. *Id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

72. The Parole Commission and Reorganization Act authorizes the Commission to "grant or deny release on parole notwithstanding the guidelines ... if it determines there is good cause for so doing." 18 U.S.C. § 4206(c) (1982). As explained during floor debate on the bill that became the Act, this provision "grant[s] the Commission the option of acting outside the guidelines in extraordinary cases." 122 Cong. Rec. 5163 (1976) (remarks of Representative Kastenmeier).

73. *Preiser v. Rodriguez, supra* note 18, 411 U.S. at 484, 93 S.Ct. at 1833, 36 L.Ed.2d at 447.

—(2) *The Circuit Decisions*

Our analysis of *Preiser* is in complete accord with its earlier treatments by this court, and is strongly supported by an impressive array of decisions in other circuits. We have approved a mandamus action as an appropriate proceeding by an inmate of a distant federal prison who sought "a ruling on federal parole eligibility policies applicable throughout the country." [74] The inmate, we said,

> did not challenge the fact or duration of his confinement. Rather, he asked for earlier eligibility for parole consideration. Consequently, he was not *required* to bring his claim as a habeas action. [75]

We have also permitted a suit for an injunction compelling compliance with statutorily required procedures in parole rule-making, [76] and an action seeking disclosure of parole documents. [77] In neither of the latter two cases did we deem it necessary even to mention *Preiser*. [78]

A number of our sister circuits have similarly concluded that a federal prisoner is not restricted to habeas corpus when his claim is that parole action violates constitutional or statutory standards and the ruling thereon will not automatically effect a release from incarceration. The First Circuit has held that habeas corpus is not the exclusive avenue to relief when the "plaintiff [does] not seek release from detention but simply an order mandating a probable cause hearing." [79] The Second Circuit distinguishes challenges to denials of parole from challenges to the way in which they are reached, declaring that "the manner of parole decision-making, not its outcome ... does not present a complaint of the sort in *Preiser v. Rodriguez* ... for which habeas corpus would be appropriate." [80] Thus, a prisoner's allegations that the United States Parole Board, the Commission's predecessor, failed to comply with its own regulations, employed constitutionally deficient procedures, and reached arbitrary and unlawful conclusions would, if proven, support issuance of a writ of mandamus. [81] The court has explained:

> A petition challenging parole procedures but not demanding release or the granting of parole differs from the petitions before the Court in *Preiser v. Rodriguez* in an important respect. Although the relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the board, unlike *Preiser* where the restoration of good-conduct-time-credits would have resulted automatically in the shortening of the prisoner's confinement. [82]

The Third Circuit, analyzing *Preiser* in light of *Wolff*, has held that *Preiser* does

---

**74.** *In re Chatman-Bey, supra* note 32, 231 U.S. App.D.C. at 76, 718 F.2d at 488.

**75.** *Id.* at 75 n. 7, 718 F.2d at 487 n. 7 (emphasis in original).

**76.** *Pickus v. United States Bd. of Parole*, 165 U.S.App.D.C. 284, 291, 507 F.2d 1107, 1114 (1974); see also *Pickus v. United States Bd. of Parole*, 177 U.S.App.D.C. 93, 94, 543 F.2d 240, 241 (1976).

**77.** *Lykins v. United States Dep't of Justice*, 233 U.S.App.D.C. 349, 351, 725 F.2d 1455, 1457 (1984).

**78.** See also *Goode v. Markley*, 195 U.S.App.D.C. 391, 393 & nn. 3–4, 603 F.2d 973, 975 & nn. 3–4 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980) (without determining availability of habeas corpus, court found mandamus a suitable vehicle for requesting parole hearing).

**79.** *Fernandez v. Trias Monge*, 586 F.2d 848, 852 n. 4 (1st Cir.1978).

**80.** *Haymes v. Regan*, 525 F.2d 540, 542 (2d Cir. 1975) (citation omitted).

**81.** *Billiteri v. United States Bd. of Parole, supra* note 53, 541 F.2d at 946–947. The court further held, however, that jurisdiction was lacking because the sole relief requested—release on parole or a complete discharge from prison—could only be granted by means of habeas corpus. *Id.* at 947–948.

**82.** *Williams v. Ward*, 556 F.2d 1143, 1150 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977) (inmate's claim of denial of due process by refusal to allow him to inspect certain letters in his prison and parole-board files could proceed outside of habeas corpus since it "concerned the manner of parole decision making, not its outcome").

not preclude a class representative from obtaining a judgment declaratory of the invalidity of parole guidelines and an injunction against their application to prisoners' parole applications.[83] The class was not restricted to habeas corpus, the court said, because "[t]he class does not demand that its members be released on parole, but only that the Parole Board not utilize the guidelines in evaluating future parole applications."[84] The Fourth Circuit has held that due process objections to parole-eligibility proceedings could be litigated under Section 1983,[85] explaining that the "plaintiffs disclaim that the purpose of their suits is to effect their release or to shorten the duration of their confinement" and consequently that "we do not deem this is a case where the suits were close to the core of habeas corpus."[86] The Fifth Circuit has at least twice held that attacks on the validity of parole procedures can be made in non-habeas suits,[87] and the Seventh Circuit has found *Preiser* inapplicable to a prisoner's suit for his trial transcript and damages on the ground that its connection with the prospect of release through a successful appeal was "too tenuous."[88]

These decisions furnish solid support for our interpretation of *Preiser* and our conclusion that it does not bar Pearson's bid for a judgment declaring the guideline in question invalid and an injunction compelling the Commission to disregard it in resetting his parole-eligibility date. This would accomplish no more than an eventual redetermination of his parole-eligibility date in conformity with constitutional and statutory requirements. Pearson's challenge thus is to the manner in which the decision on his eligibility date was reached, and a successful outcome would not automatically terminate or shorten the period of his confinement. Pearson's prospects for earlier parole may brighten if he prevails, but the time at which he would actually become eligible for parole consideration would remain subject to the Commission's discretion. Our sister circuits would agree that Pearson is not restricted to habeas corpus, but may proceed with his action for declaratory and injunctive relief.

### III. THE MOTION TO TRANSFER

■ The Commission predicates its mandamus petition additionally on the ground that the District Court erred in denying the Commission's motion to transfer Pearson's case to the Western District of Texas, wherein he is incarcerated. Judicial discretion to transfer federal civil litigation undoubtedly is broad,[89] but certainly it is not unbridled,[90] and a writ of mandamus will lie if discretion is abused.[91]

83. *Geraghty v. United States Parole Comm'n, supra* note 53, 579 F.2d at 244.

84. *Id.*

85. *Bradford v. Weinstein,* 519 F.2d 728, 733–735 (4th Cir.1974), *vacated as moot,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

86. *Id.* at 733.

87. *Williams v. McCall,* 531 F.2d 1247, 1248 (5th Cir.1976) (distinguishing attack on validity of parole-decision procedure from attack on validity of denial of parole, and ruling that the latter must be brought in habeas corpus, but the former need not); *Shaw v. Briscoe,* 526 F.2d 675, 676 (5th Cir.1976) (per curiam), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977) (court could grant declaratory relief in § 1983 suit challenging constitutionality of various procedures of state parole board).

88. *Lumbert v. Finley,* 735 F.2d 239, 242 (7th Cir.1984). But see *Bijeol v. Benson,* 513 F.2d 965, 967 (7th Cir.1975) (challenge to Parole Board's failure to comply with statute by not holding hearings for prisoners by the time they had served one-third of their sentences had to proceed in habeas corpus because "gist of petitioners' allegations is that they are being unlawfully subject to physical restraint by reason of the Parole Board's failure to comply with the statute").

89. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1982).

90. E.g., *Fine v. McGuire,* 139 U.S.App.D.C. 341, 343, 433 F.2d 499, 501 (1970) (per curiam).

91. *In re Chatman-Bey, supra* note 32, 231 U.S. App.D.C. at 74, 718 F.2d at 486; *Starnes v. McGuire, supra* note 26, 168 U.S.App.D.C. at 15, 512 F.2d at 929; *Fine v. McGuire, supra* note 90, 139 U.S.App.D.C. at 343, 433 F.2d at 501. We

In *Starnes v. McGuire*,[92] this court, sitting *en banc*, identified factors legally significant in determining whether a transfer of a prisoner's civil suit is warranted.[93] Factors weighing in favor of transfer include the difficulty of communicating with counsel, the burden of transferring the prisoner, the availability of witnesses and files, the capacity to expedite final resolution, and whether the complaint sounds in habeas corpus.[94] On the other hand, needs for the testimony of witnesses residing in or near the District of Columbia and the production of documents located here favor retention of the suit.[95] Disregard of these factors may amount to an abuse of discretion justifying issuance of a writ of mandamus.[96]

The District Court's terse explanation of its rejection of the Commission's motion for transfer falls considerably short of what we contemplated when we supplied guidelines for judges to observe.[97] Nevertheless, after analyzing the court's supporting memorandum in its entirety, we cannot say that the court fatally misapplied the criteria laid out in *Starnes*. The court found that the factual inquiries summoned by Pearson's contentions could better be pursued in the District of Columbia than in Texas, explaining that " 'the decision was made here, the decision makers are here, as well as any information the decision makers may have relied upon in making their determinations.' " [98] This conclusion relates directly to two of the *Starnes* factors. We recognized in *Starnes* that, although in some cases witnesses and files would be more accessible at the place of confinement, in other instances it would be necessary to obtain testimony and documents from officials located in the District of Columbia.[99] The District Court's statement indicates sufficiently that it weighed these two factors and found that the balance tips in favor of retention. The court's ruling seems to have also involved consid-

have awarded the writ where the District Court *sua sponte* ordered a case transferred, *In re Chatman-Bey, supra* note 32, 231 U.S.App.D.C. at 75, 718 F.2d at 487; transferred a case to a court lacking venue, *In re Scott, supra* note 26, 228 U.S.App.D.C. at 280, 709 F.2d at 719; *Relf v. Gasch,* 167 U.S.App.D.C. 238, 242, 511 F.2d 804, 808 (1975); failed to afford an opportunity for a hearing prior to transfer, *Fine v. McGuire, supra* note 90, 193 U.S.App.D.C. at 343, 433 F.2d at 501; or gave a pertinent factor improper consideration, *In re Scott, supra* note 26, 228 U.S.App. D.C. at 282, 709 F.2d at 721 (convenience of the court, standing alone, is not sufficient reason to transfer case). Consideration of an improper factor might bring about the same result. See *Jones v. Gasch,* 131 U.S.App.D.C. 254, 265, 404 F.2d 1231, 1242 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968) (denying transfer under identical provision of Fed.R. Crim.P. 21(b)). The first three circumstances enumerated are absent here. The District Court did not transfer *sua sponte;* both parties had the opportunity to present arguments at a hearing on the motion to transfer. Venue in the District of Columbia is proper for Pearson's declaratory and injunctive suit against the Commission, 28 U.S.C. § 1391(e) (1982); though the Commission's offices are physically located in Bethesda, Maryland, the Commission is an independent agency in the Department of Justice, see 18 U.S.C. § 1402 (1982). The issue we are called upon to decide is whether the District Court properly considered the factors legally relevant to a motion to transfer.

**92.** *Supra* note 26.

**93.** *Starnes v. McGuire, supra* note 26, 168 U.S. App.D.C. at 15–19, 512 F.2d at 929–933.

**94.** *Id.* at 15–18, 512 F.2d at 929–932.

**95.** *Id.* at 18–19, 512 F.2d at 932–933.

**96.** See *id.* at 15, 512 F.2d at 929.

**97.** After finding that it had jurisdiction to hear Pearson's claims, the District Court summarily declared:

> Nor will the Court grant defendant's motion to transfer under 28 U.S.C. § 1404. That section allows transfers only to a district where the action might have otherwise been brought, and "for the convenience of parties and witnesses, in the interest of justice." For the reasons set forth above this is the most appropriate forum in terms of where the decision makers and the custodian entity are found.

*Order, supra* note 21, at 5, R.App. (6)6 (citation omitted). The "reasons set forth above" are discernible only from the court's discussion of the jurisdictional problem.

**98.** *Id.* at 4, R.App. (6) 5, quoting *Procacci v. Sigler, supra* note 24, 61 F.R.D. at 7.

**99.** *Starnes v. McGuire, supra* note 26, 168 U.S. App.D.C. at 17, 19, 512 F.2d at 931, 933.

eration of difficulties associated with transfer of the prisoner when he needs to testify, a third factor articulated in *Starnes*.[100] Having found that the case will revolve around the testimony of officials located here, rather than testimony of Pearson or Texas officials, the court apparently viewed that factor as disfavoring transfer, and in any event the record reveals its significance.

The District Court did discuss, and reject, a fourth factor identified in *Starnes*, which otherwise would have called for transfer. We pointed out in *Starnes* that many prisoners' suits ostensibly for mandamus writs or for declaratory judgments actually sound in habeas corpus and therefore should be brought in the court having jurisdiction over the prisoner's immediate custodian.[101] The District Court held, however, as have we, that Pearson was not limited to habeas corpus in his bid for declaratory and injunctive relief.[102] Although the court addressed this factor only in the jurisdictional context,[103] it obviously could not have supported a decision to transfer. The court did not allude to any difficulty Pearson might encounter in communicating with counsel or to any impediment to speedy resolution of the case. While these two factors were articulated in *Starnes*, they are, in the totality of circumstances here, too weak to make out a case for transfer. Considering the factors upon which the court did rely, we cannot say that it so far disregarded the criteria laid out in *Starnes* as to justify issuance of the sought-after writ.

The District Court did not err in retaining jurisdiction over Pearson's claims. Nor did it abuse its discretion in refusing to transfer the case. The Commission's petition for a writ of mandamus is accordingly denied.

*So ordered.*

**100.** See *id.* at 16–17, 512 F.2d at 930–931.

**101.** *Id.* at 17–18, 512 F.2d at 931–932.

**102.** *Order, supra* note 21, at 3, R.App. (6)4.

**103.** The court declared that "[f]or the reasons set forth above this is the most appropriate forum in terms of where the decision makers

and the custodian entity are found." *Order, supra* note 21, at 5, R.App. (6) 6. The statement, "for the reasons set forth above," is ambiguous, but appears to refer to the court's explanation of its conclusion that *Preiser* did not present an obstacle.