**UNITED STATES, Appellee,**

v.

**Jon D. COLE, Private First Class, U.S. Army, Appellant.**

No. 50,629.
CM 444017.

U.S. Court of Military Appeals.

April 20, 1987.

Certiorari Denied Oct. 5, 1987.
See 108 S.Ct. 97.

For Appellant: *Captain Craig E. Teller* (argued); *Captain Pamela G. Montgomery* (reargued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr.* (on brief); *Colonel Brooks B. LaGrua* and *Captain Michael D. Graham.*

For Appellee: *Captain Stephen B. Pence* (argued and reargued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky, Captain John J. Park, Jr.* (on brief); *Colonel Norman G. Cooper* and *Lieutenant Colonel Gary F. Roberson.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of a military judge alone at Hunter Army Airfield, Georgia, during February and March 1983. Contrary to his pleas, he was found guilty of fraudulent separation, in violation of Article 83(2), Uniform Code of Military Justice, 10 U.S.C. § 883(2). He was sentenced to a dishonorable discharge, confinement for 1 year, total forfeitures, and reduction to pay grade E-1. The convening authority approved the sentence on April 15, 1983.

A petition for extraordinary relief in this case was filed with this Court on April 27, 1983. On May 11, 1983, we stayed further court-martial proceedings against appellant. 16 M.J. 117. Before we could take

final action on this petition, the convening authority, on May 18, 1983, approved appellant's request for deferment of confinement until appellate review is completed. *See* Art. 57(d), UCMJ, 10 U.S.C. § 857(d). Accordingly, we granted the Government's motion to dismiss appellant's petition for extraordinary relief as moot on July 22, 1983. 16 M.J. 215. On July 25, 1984, the Court of Military Review affirmed the findings of guilty and the sentence in a short-form opinion.

This Court granted review on the following two issues of law, although briefs were required only on the first issue.

### I

WHETHER THE COURT–MARTIAL WAS WITHOUT LAWFUL JURISDICTION OVER THE APPELLANT BECAUSE ARTICLE 3 (B), UCMJ, IS UNCONSTITUTIONAL.

### II

WHETHER A VIOLATION OF ARTICLE 83, UCMJ, WAS NOT ESTABLISHED BECAUSE THE APPELLANT'S SEPARATION WAS NOT PROCURED BY THE ALLEGED FRAUDULENT ACT.

After careful consideration of these issues, we resolve them against appellant.

Appellant enlisted on August 28, 1980, for a period of 2 years' active duty in the regular Army. This period of active duty was scheduled to expire on August 27, 1982. Appellant's DD Form 214 (Certificate of Release or Discharge from Active Duty) indicates that he was further obligated to serve 4 more years as a member of the reserves. The Government conceded that appellant was issued his DD Form 214 by the Separation Transfer Point at Fort Stewart, Georgia, on or about August 26, 1982, and he subsequently departed this

military enclave. Sometime in November 1982, he was apprehended in the civilian community by military authorities.

On February 2, 1983, appellant was arraigned at a general court-martial on several charges which were alleged to have occurred on June 8, 1982, during his active duty. They were larceny of another soldier's property, housebreaking, and receiving stolen property, in violation of Articles 121, 130, and 134, UCMJ, 10 U.S.C. §§ 921, 930, and 934, respectively. He was also charged with fraudulent separation under Article 83(2), which was alleged to have occurred on or about August 26, 1982. The earlier charges were preferred against appellant and he was informed of those charges on August 19, 1982; and the later charge was preferred on November 10, 1982.

Trial defense counsel moved that the court sever the June 8, 1982, charges on the basis of Article 3(b), UCMJ, 10 U.S.C. § 803(b). The prosecution did not oppose this motion, and the military judge granted it. After a hearing on appellant's motion to dismiss for lack of personal jurisdiction, the military judge denied this motion.[1] Appellant was then tried and convicted, contrary to his pleas, of the offense of fraudulent separation.

### I

The issue before this Court is whether appellant's court-martial lacked jurisdiction to try and punish him for the offense of procuring his false separation from the armed forces. *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 240–41, 80 S.Ct. 297, 300–01, 4 L.Ed.2d 268 (1960). Appellant asserts that it lacked jurisdiction because his arrest, trial, and punishment were all predicated on an unconstitutional statute—Article 3(b) of the Uniform Code. *See United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1,

---

1. The military judge refused to dismiss the charge of fraudulent separation under Article 83, Uniform Code Military Justice, 10 U.S.C. § 883, and rejected the argument that military authorities did not properly perfect jurisdiction on the larceny charges. Art. 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1); para. 11d, Manual for Courts-Martial, United States, 1969 (Revised edition). We find no error in this ruling as a matter of law. However, we are convinced that the judge's finding of jurisdiction in this case was based on Article 3(b).

100 L.Ed. 8 (1955). *Cf. United States ex rel. Hirshberg v. Cooke,* 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949). He avers that this statute is unconstitutional because it subjects civilians like himself to trial by court-martial. *See Toth v. Quarles, supra.* We disagree and hold that application of this statute to appellant under the circumstances of this case was constitutional and that his conviction can be sustained. *See Wickham v. Hall,* 706 F.2d 713 (5th Cir. 1983); *Wickham v. Hall,* 12 M.J. 145 (C.M. A.1981). *See also United States v. Gallagher,* 7 U.S.C.M.A. 506, 22 C.M.R. 296 (1957).

Our starting point in reaching this conclusion is Article 3(b), which states:

> *Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is,* subject to section 843 of this title (article 43), *subject to trial by court-martial on that charge* and is after apprehension subject to this chapter while in the custody of the armed forces for that trial. Upon conviction of that charge he is subject to trial by court-martial for all offenses under this chapter committed before the fraudulent discharge.

This statute was promulgated in 1950. 64 Stat. 109. The legislative history of this provision (see appendix to this opinion) clearly indicates that Congress considered a person who fraudulently secured his discharge to be a member of the armed forces. However, this statute permits court-martial of a discharged person who is merely *charged* with fraudulently securing his discharge. Conceivably, a person who was validly discharged from the armed forces could also be charged with this offense and be tried by court-martial under this provision.

In 1955, the Supreme Court issued its opinion in *Toth v. Quarles, supra,* which established a general constitutional test to determine what persons could be subjected to court-martial jurisdiction. It generally held that only persons who "are actually members or part of the armed forces" can be constitutionally subjected to court-martial jurisdiction. *Id.* 350 U.S. at 15, 76 S.Ct. at 4. If Article 3(b) is to survive this decision, it must be applied in a manner consistent with this constitutional limitation on court-martial jurisdiction. *See generally Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501–05, 105 S.Ct. 2794, 2800–03, 86 L.Ed.2d 394 (1985); *Parker v. Levy,* 417 U.S. 733, 759–61, 94 S.Ct. 2547, 2563–64, 41 L.Ed.2d 439 (1974). *See also Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

The particular holding of *Toth v. Quarles, supra,* was that a person who was validly discharged from the armed forces is a civilian who is not constitutionally subject to court-martial jurisdiction. Two questions of a constitutional nature are raised by this holding, at least with respect to its impact on Article 3(b). First, is Congress constitutionally permitted to designate or establish a court-martial as an appropriate forum to determine the validity of a person's discharge? Second, is a person who was invalidly discharged a member or part of the armed forces within the meaning of *Toth?* We resolve both questions in favor of the Government.

In answering the first question, we note that there was no dispute in *Toth* concerning the validity of his discharge. Accordingly, there is no holding in that case which would prevent Congress from empowering a court-martial to determine the validity of a discharge for jurisdictional purposes. In addition, it is uncontroverted that appellant was not a discharged soldier like Toth, but a reservist who had only been released from active duty. *See Wickham v. Hall,* 706 F.2d at 718, citing *Wheeler v. Reynolds,* 164 F.Supp. 951, 955 (N.D.Fla.1958). Assuming these facts by themselves were not sufficient to meet the *Toth* test, they surely placed appellant within the constitutional reach of Congress under Article 1, section 8, clause 12, of the Constitution of the United States, for the purposes of determining his actual military status. *See Rostker v. Goldberg,* 453 U.S. 57, 67–68, 101 S.Ct. 2646, 2653–2654, 69 L.Ed.2d 478 (1981); *Harmon v. Brucker,* 355 U.S. 579,

78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Finally, no case or authority has been cited to this Court which suggests that a court-martial does not have power to determine whether jurisdiction exists over any person brought before it. *See* Art. 39(a), UCMJ, 10 U.S.C. § 839(a) [2]; *In re United States Parole Commission,* 793 F.2d 338, 342–43 (D.C.Cir.1986); *Greylock Glen Corp. v. Community Savings Bank,* 656 F.2d 1, 3 (1st Cir.1981).

■ Of course, at such a court-martial a person claiming he is a civilian must be afforded due process in regard to a determination of his status as a member of the armed forces. Like the Court of Appeals for the Fifth Circuit, we have no doubt that the process due and much more will be afforded him by a military judge. *Wickham v. Hall,* 706 F. 2d at 717–18. Moreover, under the decision of the Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738, 758–60, 95 S.Ct. 1300, 1313–14, 43 L.Ed.2d 591 (1975), he is entitled to seek habeas corpus relief in this jurisdictional matter in a federal district court without exhausting any of his military remedies.

His failure to seek such relief, however, does not constitutionally or statutorily deprive the court-martial of its jurisdiction over this matter. *Id.*

The second question we must decide is whether appellant, on the basis of the record in this case, can be considered an actual member of the armed forces for purposes of trial and punishment by court-martial. *See Toth v. Quarles, supra,* 350 U.S. at 14–15, 76 S.Ct. at 3–4. We note that the military judge in this case found that appellant procured a fraudulent separation from the armed forces.[3] Implicit in such a finding is the determination that appellant was fraudulently separated from the armed forces. *See* para. 162, Manual for Courts-Martial, United States 1969, (Revised edition). Accordingly, the more narrow question we must decide is whether *such a person* is nonetheless a "civilian ex-soldier[ ] who had severed all relationship with the military and its institutions." *Id.* (footnote omitted). Clearly, he is not.

An initial problem we encounter is what standard determines whether a person is actually a member or part of the armed forces. *See generally* Everett, *Military*

---

**2.** The constitutional question raised by *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), should be initially resolved by a military judge at an Article 39(a) session prior to trial. *See* paras. 53(d) and 68(b), Manual, *supra.* Here, the defense expressly requested that its motion to dismiss on the basis of the unconstitutionality of Article 3(b) be reserved until a determination on the merits of the charged offense was made.

**3.** The military judge's rulings on appellant's motion to dismiss on the basis of the unconstitutionality of Article 3(b) stated:

Gentlemen, at the earlier sessions of this trial we litigated some motions and we also litigated the case on the merits, and I deferred a ruling on the issue of Article 83's constitutionality in view of the pending case of *Wickham versus Hall,* hoping that we perhaps would get a ruling which we could use as guidance from the Circuit Court of Appeals. Since that has not been forthcoming, I think it's time to dispose of this case and I'll make my ruling with the benefit of whatever guidance we have from the law, and I think we all agree that the Court of Military Appeals, on a petition for extraordinary relief by Wendy Wickham, is split three different ways. I was unable to find any other law and I think if

counsel agree, the question is open as to the constitutionality of Article 83.

I am going to rule that Article 83 is constitutional and Article 83 does allege—the Specification does allege an offense under the Code; and although I have not been requested to do so, I will make a few brief findings of fact.

One, charges were preferred against the accused and read to him by his company commander on 19 August 1982. He was also informed at that time that he would not be separated from active duty as planned. Two, First Sergeant George Jackson informed the accused between 19 August and 26 August 1982 that the accused would not be released from active duty until the court-martial charges which were then pending against him were resolved. Three, the accused did receive a DD Form 214 purporting to separate him from active duty on 26 August 1982. Four, the accused knew on 26 August 1982 that he was not entitled to be separated from the service, and the accused fraudulently obtained his release from active duty by knowingly, willingly and fraudulently presenting a false clearance form, which, at the time, he knew was false.

*Jurisdiction Over Civilians,* 1960 Duke L.J. 366. The Supreme Court has not chosen to delineate a bright-line rule but instead has proceeded on a case-by-case basis to identify those who are civilians and not within the scope of Article I, section 8, clause 14. *See McElroy v. United States ex rel. Guagliardo,* 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960); *Grisham v. Hagan,* 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279 (1960); *Kinsella v. Singleton,* 361 U.S. 234, 80 S.Ct. 297; *Reid v. Covert,* 354 U.S. 1, 22–23, 77 S.Ct. 1222, 1233–1234, 1 L.Ed.2d 1148 (1957). In *Toth v. Quarles, supra,* the Supreme Court found that a discharged soldier who had severed all relationship with the military and its institutions was not subject to court-martial jurisdiction. However, it contrasted Toth's civilian status with the military status of dishonorably discharged military prisoners in *Kahn v. Anderson,* 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469 (1921), who were serving confinement pursuant to a court-martial sentence. Its approval of *Kahn* logically suggests that discharge under all circumstances is not determinative. *See generally Reid v. Covert, supra,* 354 U.S. at 22–23, 77 S.Ct. at 1233–1234.

This conclusion is buttressed by the Supreme Court's reference to earlier statutes which extended court-martial jurisdiction over ex-soldiers. Justice Black stated in a footnote:

8. In 1863 Congress passed a statute authorizing trial of ex-soldiers for commission of fraud against the Government while in the service; this law also authorized court-martial trial of contractors not part of the military forces. 12 Stat. 696. The latter provision of the 1863 law appears never to have been sustained by any court. Lower courts have disagreed as to the constitutional validity of the provision authorizing ex-soldiers to be tried. See, *e.g., In re Bogart,* 3 Fed.Cas. 796. Compare *Ex parte Henderson,* 11 Fed.Cas. 1067; *United States ex rel. Flannery v. Commanding General,* 69 F.Supp. 661, reversed by stipulation in unreported order of the Second Circuit, No. 20235, April 18, 1946. See *United States ex rel. Hirshberg v. Cooke,* 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621. A statute authorizing court-martial trial of inmates of the Soldiers' Home has been ruled unconstitutional by the Judge Advocate General of the Army. Dig.Op.J. A.G. (1912), pp. 1010, 1012. It was declared that "such inmates are not a part of the Army of the United States, but are civilians." *Id.,* at 1012. Col. Winthrop, concededly a leading authority on military law, expressed the view that "this class of statutes, which in terms or inferentially subject persons formerly in the army, *but become finally and legally separated from it,* to trial by court-martial, are all necessarily and alike unconstitutional...." 1 Winthrop, Military Law and Precedents (2d ed. 1896), 146. The War Department reprinted this classic volume for the guidance of the Army in 1920. Winthrop, Military Law and Precedents (2d ed., Reprint 1920).

*Toth v. Quarles, supra,* 350 U.S. at 14–15, 76 S.Ct. at 3–4 (emphasis added). This express reference to the legality of the separation suggests to us that a fraudulent discharge or release from active duty is another situation like *Kahn v. Anderson, supra,* where a discharge is not determinative. *See* Winthrop, 1920 Reprint, *supra* at 89 n. 46.

In light of the above, we can now assess the facts of appellant's case. First, as noted above, appellant was a reservist at the time of his arrest and trial and, accordingly, retained some ties to the military. Second, appellant was released from active duty, not discharged like Toth and, accordingly, his severance was not complete. Third, after an appropriate hearing, appellant's separation was determined to be fraudulent, hence neither legal nor final. Such a person in our minds is not a civilian like Toth. Therefore, this record supports a conclusion that the court-martial had the constitutional power to try and punish him for his role in the procurement of this fraudulent separation. Congress exercised this power under Articles 3(b) and 83, and its judgment must be sustained. *Cf.*

*Hirshberg v. Cooke, supra; Duncan v. Usher,* 23 M.J. 29 (C.M.A.1986).

We are fully aware that the Supreme Court has stated: "Determining the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to *'the least possible power adequate to the end proposed.'*" *See Toth v. Quarles, supra,* 350 U.S. at 23, 76 S.Ct. at 8 (footnote omitted). *See generally Ex Parte Milligan,* 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866). We do not think, however, that our holding, under the circumstances of this case, violates this principle. Under Article 3(a), thousands of discharged servicemembers were exposed to trial and punishment by court-martial without regard to their status as civilians at the time of trial. Under Article 3(b) and our decision today, only those who a court-martial finds were fraudulently separated from active duty face this travail. Moreover, under Article 3(a), a vast number and variety of offenses could be immediately tried by court-martial. Under Article 3(b), the exposure to a charge of violating Article 83, at least in the first instance, is considerably more narrow. Also, as expressly recognized in the legislative history of the Code, Congress has equated such an offense to desertion, a crime which strikes at the very core of an armed force. *See* Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 884–86.[4] We do not question its judgment in this regard. *See Wickham v. Hall,* 706 F. 2d at 716. Finally, although Article 3(b) has been rarely used, it is not the type of statute which has been traditionally viewed

with disfavor by both military and civilian authorities alike.[5]

In summary, we hold that Article 3(b) was not unconstitutionally applied to appellant under the facts and circumstances of this case. From the moment of his apprehension, he was entitled to seek habeas corpus relief in federal civilian trial courts on the basis of a claim of having a valid discharge. He elected to present this claim to a military judge in the forum of a court-martial and it was resolved adversely to him. Article 3(b), in our opinion, authorizes such a proceeding and is not an unconstitutional exercise of power by Congress. *See Rostker v. Goldberg,* 453 U.S. at 67–68, 101 S.Ct. at 2653–2654; *Wickham v. Hall, supra* at 717. Once a valid determination of this jurisdictional question was made by the court-martial, it was empowered to determine appellant's guilt in this matter. *Kahn v. Anderson, supra.*

## II

Appellant's second contention is that the evidence of record was legally insufficient to establish a false-separation offense under Article 83. The specification of which he was found guilty states:

Specification: In that Private First Class Jon D. Cole, US Army, Headquarters and Headquarters Company, 3d Engineer Battalion did, at Fort Stewart, Georgia, on or about 26 August 1982, by means of knowingly false representations that his unit First Sergeant, Training Noncommissioned Officer, and Career Counselor had initialed his DA Form 137 (Installation Clearance Record) in blocks 30, 33, and 4 respectively of the said DA Form

4. See appendix.

5. The Supreme Court noted Winthrop's opinion on the constitutionality of statutes purporting to extend courts-martial jurisdiction over ex-soldiers. *See* page 22 of this opinion. Winthrop, based on civilian and military authorities, however, suggested a contrary conclusion where the discharge was fraudulent. *See* W. Winthrop, *Military Law and Precedents* 89 n. 46 (2d ed. 1920 Reprint), citing 16 Op. Att'y Gen. 349 (1879). *See also* W. Dehart, *Observations of Military Law and the Constitution & Practice of*

*Courts Martial* 35–36 (1846); C. Clode, *The Administration of Justice Under Military and Martial Law* 94, 276 (Arts. 86–87) (1874). More recent interpretations of military law suggest the same conclusion. *See* para. 10, Manual for Courts-Martial, U.S. Army, 1949; section 334, Naval Courts and Boards, 1937; para. 10, A Manual for Courts-Martial, U.S. Army, 1928; para. 38(d), A Manual for Courts-Martial, U.S. Army, 1921; para. 38(d), A Manual for Courts-Martial, U.S. Army, 1917.

137, and that his Company Commander, Captain Sam A. Bacharach had signed his DA Form 137, when, in fact, the said unit First Sergeant, Training Noncommissioned Officer, Career Counselor, and Company Commander had not initialed or signed the said DA Form 137, procure himself to be separated from the United States Army.

The DA Form 137 referred to in this specification was a record which reflected certain actions taken by the career counselor, the unit first sergeant, and the operations NCO. It pertained to a soldier's departure from the base and ultimately required the commander's signature. Appellant asserts in his supplement to petition that submission of the DA Form 137, at best, only permitted him to receive delivery of his DD Form 214 (Certificate of Release or Discharge from Active Duty). Relying on 10 U.S.C. § 1168, he then argues that receipt of the latter certificate, even if fraudulently induced, had no legal effect on the termination of his active-duty status. Accordingly, he concludes that the Government did not show a fraudulent act which *caused* his separation. *See* para. 162, Manual, *supra.*

Appellant's argument rests on the assertion that 10 U.S.C. § 1168 somehow abrogates the effect of delivery of a DD Form 214 certificate on one's active-duty status as a member of the armed forces. We rejected such an argument in *United States v. Howard,* 20 M.J. 353 (C.M.A. 1985),[6] and do so again today. This statute only provides conditions under which a servicemember can be released from active duty or discharged. It does not purport to establish the moment when he is separated or diminish the significance of delivery of a certificate of release from active duty on this process. *Id.* Accordingly, appellant's argument based on a contrary assertion

must be rejected. *See also* 10 U.S.C. § 1169.

■ We otherwise conclude that the evidence in the record was sufficient to prove appellant did a fraudulent act which caused his release from active duty. Prosecution exhibit 3 states on its face that DA Form 137 is applicable to a servicemember who is clearing post as a result of expiration of his term of service. *E.g.,* para. 3a(3), and Appendix A, paras. 1f and 2. Moreover, testimony in the record from various witnesses established a causal relationship between submission of this form and release from active duty.[7] Finally, there was ample evidence presented that this form contained fraudulent signatures or initials. In the absence of any evidence suggesting this form was unrelated to the separation process, this issue is without merit.

The decision of the United States Army Court of Military Review is affirmed.

## APPENDIX

Mr. Smart. Mr. Chairman, you have not yet discussed subsection (b) and subsection (c) of article 3.

Mr. Brooks. I thought the whole thing would be the subject of consideration.

Mr. Smart. I believe that (b) and (c) will stand on their own merits, without (a), would they not?

Mr. Larkin. Yes.

Mr. Brooks. I thought Mr. Elston's idea was to cover all three.

Mr. Larkin. We can do that when we bring the other back, if you like. (b) is part of a similar philosophy, let us say, so that we could postpone its consideration.

Mr. Smart. O.K.

6. *Howard* held that "the statutory language and the legislative history of 10 U.S.C. § 1168 show[ ] no indication that Congress intended to change the longstanding" rule that a servicemember is separated from the armed services "upon delivery to him of the discharge certificate or other valid notice of the termination of his status." 20 M.J. 353, 354 (C.M.A.1985).

7. The officer who signed the DD Form 214 testified that "if the accused had not presented what was apparently a complete DA Form 137 with the proper signatures and stamps," he "would not have issued him a" DD Form 214.

Mr. Larkin. Otherwise, it is pretty much on its own feet.

Mr. Brooks. Is there any objection to (b) and (c) as they are written?

Mr. Larkin. I might point out in connection with (b) that it is new and while it has been a regulation we did not have much confidence in the stability of a regulation of this character. The notion here purely and simply is that we retain jurisdiction or have a continued jurisdiction in the case where a person is accused of having fraudulently secured his discharge.

Now there were a number of cases during World War II where through some fraud or other a man was able to obtain discharge papers. It was a device, in other words, that was tantamount to deserting except that he was able to furnish himself with the outward legal effects of having been properly discharged.

It was a device, in other words, in which he was able to get out of the services by fraud and had a piece of paper which indicated that it was proper, but in reality it was not any different than a man who just left and deserted and had no piece of paper.

Well, there was a jurisdictional problem in that connection because under the Hirshberg ruling again, for instance, the effect of the discharge was to cut off any offense he had committed while on active duty and if you uncovered evidence that he had fraudulently obtained his discharge and attempted to try him for it, why before you could try him he could challenge the court's jurisdiction by presenting a piece of paper which on its face showed he was legitimately discharged and the court had no jurisdiction over him by virtue of that discharge.

So it was a situation that enabled a person by fraud to escape the consequences of his act and really leave the services and desert in effect. He had a piece of paper which acted as a bar to the services doing anything about it.

For that reason this is put in and that is what it is intended to accomplish: In other words, to give a continuing jurisdiction over a man whose discharge was actually a fraud.

Mr. Elston. What do you mean by those words "while in the custody of the armed forces for such trial," on lines 15 and 16? If he is discharged he is not in the custody any longer?

Mr. Larkin. Oh. May I read the whole article?

Mr. Smart. That refers to after he is apprehended for trail [sic] for the fraudulent discharge, Mr. Elston.

Mr. Larkin. That is right.

Mr. deGraffenried. You do not mean a discharge that he forged. You mean one that he obtained by some fraudulent representation?

Mr. Larkin. Either one. Well, there were cases—

Mr. deGraffenried. If he forged a discharge it looks like to me that it would be absolutely void and not considered as anything.

Mr. Larkin. He might have forged it or he might have paid some money to some clerk at a separation place and obtained the official papers. He might I suppose in a number of ways [have] obtained papers which were on their face official but which were illegally obtained, however he did it.

Mr. deGraffenried. It just looks like to me that those words there would mean that where he had really obtained a discharge it was signed properly but he had obtained it by some fraudulent misrepresentation, rather than to actually forge it.

Mr. Larkin. I think it would cover both situations.

Mr. deGraffenried. It would cover both.

Mr. Brooks. Is there any objection to that? Did you answer Mr. Elston's question with reference to being in custody?

Mr. Larkin. I thought Mr. Smart did. The notion was that he is subject to this code while he is in custody awaiting trial.

Mr. Elston. Do you not think the words ought to be "shall after apprehension be

subject to this code while in the custody of"?

Mr. Larkin.  I think that would certainly not change the sense and would clarify it.

Mr. Elston.  It makes it a little clearer.

Mr. Hardy.  Well he has to be subject to the code before he is apprehended, has he not?  Otherwise, how are you going to get authority to pick him up?

Mr. Larkin.  Well, this gives us the jurisdiction to apprehend him.

Mr. Smart.  I think the point there, Mr. Hardy, would be, in line 15, after the word "shall," you would put the words "after apprehension."  So you presume the first time that he is already subject to jurisdiction and the second time, after you have him, then he is subject to any offense he commits while in custody.

Mr. Brooks.  Yes; your jurisdiction is under that preceding clause there, "Shall be subject to trial by courts martial."

Mr. Hardy.  Yes.

Mr. Brooks.  Suppose you put your suggested change there, Mr. Elston, in proper language and we will vote on it.

Mr. Elston.  Mr. Chairman, I would offer the amendment that on line 15, after the word "shall" he—

Mr. Brooks.  What page now?

Mr. Elston.  Page 6, line 15, after the word "shall" insert the words "after apprehension."

Mr. Brooks.  You heard the motion, gentlemen.  Any objection to it?

Mr. Hardy.  No.

Mr. Brooks.  If not, that insertion will be made.

Now what about subsection (c)?  Is there any discussion on that?

Mr. Larkin.  I might point out, as we did in the commentary, that that is prompted by a case in California, the circumstances of which are as follows: A man deserted from the Marines and enlisted in the Navy and was given an honorable discharge after his service in the Navy and that discharge was held to operate as a bar to trying him for his original desertion.  This is designed to correct that situation.

Mr. Brooks.  You have heard the section or article.  If there is no objection to it, excepting for subsection (a), it will stand approved.

COX, Judge (concurring):

I completely agree with the opinion by Judge Sullivan and write only because I wish to state my disagreement with the dissenting opinion filed by Chief Judge Everett.

I believe the issue in this case clearly and simply stated is:  Can a servicemember avoid the jurisdiction of a court-martial by fraudulently procuring his separation from active duty?

Although I find the dissenting opinion to be somewhat ambiguous, it seems to say that a servicemember can avoid being prosecuted by a court-martial if he is clever enough to connive and deceive the personnel staff of his command to issue him a DD Form 214.*  If the form is properly issued, even if by mistake, jurisdiction is, of course, lost.  *United States v. Howard,* 20 M.J. 353 (C.M.A.1985).

On the other hand, the dissenting opinion also seems to say that if an Article III court decides a separation from military service was fraudulently procured, the military somehow, mysteriously, will "reacquire" jurisdiction over the fraudulently-separated person.

Courts-martial either do or do not have jurisdiction over persons who obtain separations by fraudulent means.  For the sake of argument, consider the following:

(a) If courts-martial do not have jurisdiction over persons who obtain fraudulent separations, any servicemember can avoid being prosecuted for procuring a fraudulent separation—an untenable consequence.

(b) If courts-martial do have jurisdiction over persons who obtain fraudulent separa-

---

* Department of Defense Form 214, "Certificate of Release or Discharge From Active Duty."

tions—and I agree with Judge Sullivan that they do—then courts-martial need not be so informed by an Article III court.

As far as I am concerned, the fact that a separation is either forged; bought by bribery; stolen after it has been prepared but not yet delivered; or procured by fraud is a distinction without meaning. In each instance, a servicemember commits an overt act to obtain release from military service against the will of an appropriate separation authority.

The real question presented here is whether the courts as structured within the military justice system—including courts-martial, Courts of Military Review, and this Court—can determine if they are or are not empowered to exercise jurisdiction over an individual. In my view, it is fundamental black-letter law that every court has the power to determine the question of its jurisdiction over the persons and subject matter coming before it.

As to subject-matter jurisdiction, the Supreme Court laid the matter to rest in its decision in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Courts-martial and the appellate military review courts created by Congress have the power to determine subject-matter jurisdiction which, absent some extraordinary wrong against an accused other than subjecting him to trial, may not be attacked in Article III courts until the remedies provided under the Uniform Code of Military Justice have been exhausted. *Id.* at 758, 95 S.Ct. at 1313.

The authority to determine *in personam* jurisdiction perhaps is vested, mutually, in military and Article III courts. *But see Schlesinger v. Councilman, supra* at 758–59, 95 S.Ct. at 1313–14. In any event, the collateral attack of a court-martial in an Article III court may be a relic because the Supreme Court now exercises direct review of this Court's decisions. Art. 67(h)(1), Uniform Code of Military Justice, 10 U.S.C. § 867(h)(1); *see Schlesinger v. Councilman, supra* at 746, 95 S.Ct. at 1307.

Whether a court-martial proceeding can be collaterally attacked in light of this amendment is a matter yet to be determined by the Supreme Court.

However, I am comforted by the fact that this Court has the power to order the release of a "civilian" who is being tried by court-martial, pursuant to the All Writs Act, 28 U.S.C. § 1651. And this Court is not at all interested in permitting civilians to be tried by courts-martial in violation of long-standing Supreme Court decisions. *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); *Ex Parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866). *United States v. Howard, supra*, reflects this Court's determination to adhere to these principles.

EVERETT, Chief Judge (dissenting):

In my dissent in *Wickham v. Hall*, 12 M.J. 145, 154 (C.M.A.1981), I explained my conclusion that Article 3(b), Uniform Code of Military Justice, 10 U.S.C. § 803(b), is unconstitutional in light of *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). In his dissent in *Wickham v. Hall*, 706 F.2d 713, 718 (5th Cir.1983), Judge Thornberry expressed similar views. Consistent with my rationale in *Wickham*, I am convinced that in this case the court-martial had no jurisdiction to try Cole for fraudulent separation from the Army.

In *Toth*, the Supreme Court established a "bright line" test in ruling that a former servicemember could no longer be tried by court-martial for offenses which came to light after his discharge. This test focused on the presence or absence of military status. It was based on the language of Article I, section 8, clause 14 of the Constitution of the United States, which refers to "the land and naval Forces"; and, according to *Toth*, these "forces" do not include persons who previously were in the armed forces.[1]

---

**1.** Perhaps *Toth* has not overturned some earlier holdings like *Kahn v. Anderson*, 255 U.S. 1, 41

S.Ct. 224, 65 L.Ed. 469 (1921), which involved offenses committed by an ex-servicemember

If Cole had forged his discharge certificate, I would fully agree with the majority that jurisdiction continued to exist because a forged document is a nullity. In that event, he would not have been "separated" from the armed services.[2] Also, in my view, if military jurisdiction attached by the preferral of charges or by the taking of similar action with respect to the other offenses with which Cole was charged, such jurisdiction was not lost by reason of a subsequent discharge or release from active duty. *See United States v. Douse,* 12 M.J. 473, 479 (C.M.A.1982) (Everett, C.J., concurring in the result). Once military criminal jurisdiction attaches, it is not lost by a later change in the accused's status.

Cole's discharge certificate, however, was not forged. Moreover, the conviction now being reviewed is not for an offense as to which court-martial jurisdiction attached before he was separated. Instead, Cole has been tried and convicted by court-martial for obtaining his separation pursuant to a document—DD Form 214—which purported to end his active-duty status. This document was regular on its face and was voluntarily delivered to him by the Army's own agents.

Thereafter, Cole was living as a civilian at his residence in Florida when the Army sought to exercise court-martial jurisdiction over him and to force him to return to Fort Stewart, Georgia, to face trial. This exercise of jurisdiction was based on an accusation that he had procured his separation—and his civilian status—by fraud. However, the Army's assertion of jurisdiction over Cole was not preceded by a hearing before a magistrate or judge—civilian or military—to determine whether probable cause existed to believe that he was guilty of procuring a fraudulent separation.

After his return to Army custody, a pretrial hearing took place on the charges pursuant to Article 32 of the Uniform Code, 10 U.S.C. § 832. However, this hearing—which was not conducted by a military magistrate or judge—was not binding on the convening authority who, regardless of any recommendation by the Article 32 hearing officer, was still free to proceed with trial by court-martial.

The implications of this procedure are disturbing. Simply on the basis of an allegation that he has violated Article 83, UCMJ, 10 U.S.C. § 883, which prohibits fraudulent procurement of separation from the armed forces, someone who has received a discharge valid on its face and has become part of the civilian community may be seized by military police, carried away from his residence for trial at a distant location, and kept in confinement pending trial. No hearing of any type—military or civilian, adversary or *ex parte*—is necessary. Thus, contrary to the usual presumption of innocence, jurisdiction is based on a presumption of guilt derived from a mere accusation of fraudulent separation.

*Toth* is a clear bar to such an exercise of military jurisdiction. Indeed, Article 3(b) fails all three of the tests used there by the Supreme Court and discussed by Judge Cook in *Wickham v. Hall,* 12 M.J. at 151. In the first place, unlike prosecutions for combat offenses, the prosecution of an ex-servicemember like Cole does not further materially "the 'primary' function of the military 'to fight or be ready to fight wars,' rather than the 'incidental' purpose of maintaining discipline within the service." *See* 350 U.S. at 17, 22–23, 76 S.Ct. at 5, 8–9. Moreover, although it affects available manpower, the offense of fraudulently procuring a discharge does not involve a flouting of military authority to the same extent as desertion or unauthorized absence.

Second, to uphold military authority here would " 'actually and potentially' sweep un-

---

who, even though discharged, was in custody pursuant to the sentence of a court-martial. *Cf.* Art. 2(a)(7), Uniform Code of Military Justice, 10 U.S.C. § 802(a)(7).

**2.** Therefore, probably he could not be prosecuted under Article 83, UCMJ, 10 U.S.C. § 883, for fraudulent separation. However, prosecution would be permissible under Article 123, UCMJ, 10 U.S.C. § 923, for forgery and perhaps also under Article 134, UCMJ, 10 U.S.C. § 934.

der military jurisdiction a great number of persons not otherwise subject to military law." *Id.* at 19–20, 22–23, 76 S.Ct. at 6–7, 8–9. Only two cases have been prosecuted under Article 3(b) during the 35 years the Uniform Code of Military Justice has been in effect. If, however, an allegation of fraudulent separation suffices to establish military jurisdiction, henceforth any veteran runs the risk of being subjected to trial by court-martial for having allegedly procured a fraudulent discharge; and, if convicted, he can be tried by court-martial for any other alleged violation of the Uniform Code that preceded the discharge.[3]

To take advantage of this opportunity for exercising military jurisdiction over veterans, the Armed Services could slightly modify discharge procedures to require that, as a condition for separation, a servicemember make a large number of representations—perhaps including a representation that he has not committed any crime during his period of military service. Later, if military authorities choose to court-martial him, they can allege that the discharge was procured by means of a misrepresentation; prosecute the purported ex-servicemember for fraudulent separation in violation of Article 83; and, if successful, then try him for any other alleged offenses under the Uniform Code.[4]

The third criterion under *Toth* concerns the necessity for having court-martial jurisdiction; and the premise of *Toth* is that such jurisdiction should be "limited to ' "*the least possible power adequate to the end proposed.*" ' " *Id.* at 23, 76 S.Ct. at 8. *See also Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242 (1821). As the Supreme Court later explained in *Lee v. Madigan*, 358 U.S. 228, 232–33, 79 S.Ct. 276, 279–80, 3 L.Ed.2d 260 (1959):

We do not write on a clean slate. The attitude of a free society toward the jur-

isdiction of military tribunals—our reluctance to give them authority to try people for nonmilitary offenses—has a long history.... We pointed out the great alarms sounded when James II authorized the trial of soldiers for nonmilitary crimes and the American protests that mounted when British courts-martial impinged on the domain of civil courts in this country. The views of Blackstone on military jurisdiction became deeply imbedded in our thinking: "The necessity of order and discipline in an army is the only thing which can give it countenance; and therefore it ought not to be permitted in time of peace, when the king's courts are open for all persons to receive justice according to the laws of the land." 1 Blackstone's Commentaries 413. [Other citation omitted.] We spoke in that tradition in *Toth v. Quarles*, 350 U.S. 11, 22 [76 S.Ct. 1, 8], "Free countries of the world have tried to restrict military tribunals to the narrowest jurisdiction deemed absolutely essential to maintaining discipline among troops in active service."

The paucity of cases prosecuted under Article 3(b)—only two in 35 years—demonstrates that no necessity exists for the claimed jurisdiction. Equally significant—as Judge Thornberry and I both pointed out in our *Wickham* opinions—there are adequate means for handling fraudulent discharges without extending court-martial jurisdiction.

For one thing, more careful processing of discharges would prevent commission of the offenses with which Wickham and Cole have been charged. If this care had been exercised, military authorities might be prosecuting the accused for an attempt to procure a fraudulent separation, an offense as to which court-martial jurisdiction clearly exists, rather than for the consummated

---

**3.** *See* Art. 3(b). Under the Government's rationale, he might even be subject to trial for alleged offenses occurring between his receipt of the fraudulent discharge and the conviction for having procured the discharge fraudulently.

**4.** The statute of limitations has recently been extended; and so this jeopardy would continue for at least 5 years. *See* Military Justice Amendments, Pub.L. No. 99–661, § 805 (1986), to Art. 43, UCMJ, 10 U.S.C. § 843.

crime, as to which such jurisdiction is lacking.

If, however, a fraudulent discharge is procured, the Government can obtain relief in a Federal District Court. A civil suit—not subject to the requirement of proof beyond a reasonable doubt—can be commenced to set aside the discharge on grounds of fraud and to restore the accused's military status and thereby subject him to military jurisdiction. Also, a criminal prosecution under 18 U.S.C. § 1001 can be instituted in a Federal District Court.

Even though Article 3(b) seems clearly to violate the constitutional mandate of *Toth,* the Government—with some support in recent lower court opinions—contends that it is valid. The argument is made that a court—in this instance, the court-martial which tried Cole—should be free to determine its own jurisdiction. However true this may be in some instances, it is difficult, in light of *Toth,* to conclude that this principle authorizes a military tribunal to override the presumption of innocence and try an ex-servicemember who has been issued a discharge which is valid on its face and unrevoked by any decree of a civilian court.

There also has been some reliance on deference to "military expertise." While this expertise may be helpful in interpreting orders and regulations, the issue of fraud raised here and in *Wickham* does not require special expertise for its resolution. Instead, it is the very type of issue that can be handled well in a civilian court. Thus, "military expertise" is no better justification for court-martial jurisdiction over Cole than it was for such jurisdiction over Toth.

The point also has been made that military justice offers many safeguards for an accused—such as protection against coerced confessions or cruel and unusual punishment. *See* 706 F.2d at 717 n. 5. However, courts-martial do *not* provide trial by jury, which the Constitution requires for persons not in the "land and naval Forces." *Cf. Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *Toth v. Quarles, supra,* 350 U.S. at 17–19, 5–7. The Supreme Court has emphasized the importance of the right to jury trial in rejecting efforts to extend court-martial jurisdiction.[5] Since Cole was not in the "land or naval forces" when the Army sought to exercise jurisdiction over him, he could not lawfully be deprived of this right. The presence of other safeguards in a trial by court-martial is immaterial because the Supreme Court has not recognized any functional equivalent for jury trial.[6]

In support of Article 3(b), it has also been suggested that, if unjustly treated by court-martial, the accused can seek a writ of habeas corpus. However, in seeking the writ, he apparently will not have the assistance of appointed counsel to aid him, even if he is indigent. Also, if exhaustion of remedies is required,[7] a hearing on the merits of his petition for a writ of habeas corpus may be long delayed.

Although Cole may have been a reservist, he had—as I understand the facts—completed all the active duty contemplated under his enlistment contract with the Army. He would not have been recalled to active duty other than during mobilization in some time of national emergency. 10 U.S.C. §§ 672 and 673. Under these circumstances, his membership in the inactive reserve did not authorize his trial by court-martial. *See United States v. Brown,* 12

---

5. *See, e.g., Lee v. Madigan,* 358 U.S. 228, 234, 79 S.Ct. 276, 280, 3 L.Ed.2d 260 (1959); *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 17–18, 76 S.Ct. 1, 5–6, 100 L.Ed. 8 (1955); *Ex parte Milligan,* 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866).

6. The absence of a right to bail in connection with trials by courts-martial is an aggravating factor because Cole had no remedy if military authorities decided to keep him in pretrial confinement.

7. *Cf. Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969).

U.S.C.M.A. 693, 695, 31 C.M.R. 279, 281 (1962). For purposes of military criminal jurisdiction, the DD Form 214 received by Cole was the equivalent of Toth's honorable discharge.[8] Therefore, until that DD Form 214 had been revoked by a civilian court, Cole was no more subject to trial by court-martial—even for fraudulent discharge—than was Toth.

If, prior to prosecution by court-martial, Cole had been properly returned to active-duty status pursuant to valid orders, the situation would have been different. However, active-duty status is a prerequisite for court-martial jurisdiction. *Duncan v. Usher*, 23 M.J. 29 (C.M.A.1986).[9] In the absence of this status, any reserve obligation to which Cole was subject is irrelevant.

There is not only a statutory but also a constitutional basis for the emphasis on active-duty status. In requiring grand-jury indictment, the Fifth Amendment makes an exception for "cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." Apparently, the drafters of the Bill of Rights did not consider that the potential obligation of militiamen to serve on active duty justified denying them the protection of a grand-jury indictment or a jury trial.

The "Militia" referred to in the Fifth Amendment was the forerunner of the National Guard. However, when the Bill of Rights was adopted, the Army and Navy had no reserve component of the type that now exists. In my view, reservists on active duty are clearly part of the "land and naval Forces"—both for purposes of the Fifth Amendment and of Article I, section 8, clause 14 of the Constitution, which empowers Congress to make "Rules for the Government and Regulation of the land and naval Forces."

A greater question exists as to the inclusion of inactive reservists in the "land and naval Forces" for purposes of exercising court-martial jurisdiction. Indeed, for someone like Cole, who will be called to active duty only in a period of national emergency, I do not believe that court-martial jurisdiction can be rested on inactive-reserve status. Indeed, if Cole's inactive-reserve status made him subject to Article 3(b)—while other ex-servicemembers who had no comparable reserve obligation were outside its purview—the basis for the distinction as to jurisdiction would be so ephemeral as to raise a serious equal-protection issue.[10]

I am sympathetic with the goal that Article 3(b) seeks to achieve. However, I can not ignore the guidance provided in *Toth*. There, Justice Black said that "[i]t is impossible to think that the discipline of the Army is going to be disrupted, its morale impaired, or its orderly processes disturbed, by giving ex-servicemen the benefit of a civilian court trial when they are actually civilians." 350 U.S. at 22, 76 S.Ct. at 8. Likewise, these baneful effects will not be encountered if, in the first instance, a civilian court considers the allegations that the facially valid discharge received by Cole was fraudulently procured.

Accordingly, I have no choice but to conclude that Article 3(b) is unconstitutional and that appellant's conviction for fraudulent separation should be set aside and the charge dismissed.

---

**8.** The opinions in *Toth v. Quarles, supra,* do not discuss whether, under the statutes then in effect, Toth had any reserve obligation that survived his discharge.

**9.** I have noted earlier that, in my view, if military jurisdiction attaches by the preferral of charges while the accused is in an active-duty status, this jurisdiction will continue even after the active-duty status terminates.

**10.** "Due process" in the Fifth Amendment includes equal protection. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).